551 A.2d 9

In Re: Blue Knob Recreation, Inc., Assessment Appeal. Blue Knob Recreation, Inc., Appellant.

Submitted on briefs September 13, 1988, to President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Paul S. Foreman, Foreman, Swartzkopf & Dickey,* for appellant.

*Thomas S. Ling,* for appellee, Bedford County Tax Assessment Board.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 15, 1988:

Blue Knob Recreation, Inc. (Blue Knob), appeals Bedford County Common Pleas Court orders affirming the Bedford County Board of Assessment and Revision of Taxes and denying its motion for post-trial relief and/or reconsideration. We affirm.

In 1974, Blue Knob executed a lease agreement to operate a ski resort on Commonwealth land.[1] The premises consisted of various buildings, some of which

---

[1] The lease was for thirty-five one-year terms and renewed automatically each term.

Blue Knob had the option to demolish. Blue Knob agreed to pay an additional yearly rental fee for those existing structures which it continued to use as part of the ski facility. During the 1977-1978 ski season, Blue Knob constructed a new lodge. Although constructed at Blue Knob's expense, the record does not disclose whether it paid an additional rental fee to the Commonwealth.

In 1986, Bedford County assessed a tax on the new lodge[2] pursuant to Section 201 of The Fourth to Eighth Class County Assessment Law (Act),[3] which subjects to taxation for county purposes "[a]ll real estate" including "buildings, lands, lots of ground and ground rents . . . ." Blue Knob's appeal of this assessment to the Board was denied, whereupon it appealed to the common pleas court. Section 704(a) of the Act, 72 P.S. §5453.704(a). The trial court upheld the assessment.

In Pennsylvania, the general rule concerning a lessee's tax liability is whether "there are indicia that the title to the improvements, as well as the leasehold itself, remains in the lessee during the term." *Venango Federal Savings and Loan Association v. County of Venango,* 73 Pa. Commonwealth Ct. 313, 315, 457 A.2d 1340, 1341 (1983).

The trial court reviewed Section 6, paragraphs 8 and 10 of the lease and concluded that ownership interest in the ski lodge remained with Blue Knob. Our reading of those paragraphs, which specifically address ownership

---

[2] Testimony in the record establishes that in 1978 the County attempted to assess a tax upon the newly constructed ski lodge. Blue Knob appealed, and two years later the assessment was dropped. From 1978 until the present action, Blue Knob paid no tax. The County has never assessed any tax on the buildings in existence when the lease was first executed.

[3] Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. §5453.201.

of permanent improvements, compels the same conclusion.

Paragraph 8 indicates ownership of permanent improvements made by Blue Knob *will pass* to the Commonwealth "at the end of the thirty-fifth term of this agreement . . . ." Moreover, if the lease terminates prior to the end of the thirty-fifth term, Blue Knob retains a possessory interest in the permanent improvements that have not fully depreciated. Paragraph 10 further establishes that, where the lease ends before the thirty-fifth term, those facilities in which Blue Knob has a possessory interest will be sold to the Commonwealth at fair market value. As it is the intention of the parties which governs to whom leased property belongs, *City of Philadelphia v. Straub,* 106 F.2d 172 (3rd Cir. 1939), we believe the clearly expressed intent of these paragraphs confirms that the parties intended title of those structures which Blue Knob erected to vest in Blue Knob.

Blue Knob argues that since Section 6, paragraph 9 of the lease prohibits the removal of any improvements on the premises,[4] it negates the indicia of ownership. *Venango.*

While *Venango* is instructive, we decline to hold that Section 6, paragraph 9 of the lease negates Blue Knob's ownership under the standards articulated in

---

[4] Section 6, paragraph 9 provides:

All alterations, improvements, additions, whether installed before or after the execution of this Agreement, shall remain upon the premises at the termination thereof, unless LESSOR shall prior to the termination of this Agreement, have given written notice to LESSEE to remove the same, in which event LESSEE will remove such alterations, improvements and additions and restore the premises to the same good order and condition in which they now are.

that case.[5] *Venango* did not condition title *entirely* on the lessee's ability to remove the structure. Rather, it considered removal as a factor indicating indicia of ownership.[6] In *Venango,* the deed, conveying a term of thirty-three years in land, contained a habendum clause which stated that "any improvements thereon will automatically revert to and revest in" the grantor at the end of the term. *Id.* at 314, 457 A.2d at 1340-41. This Court affirmed the trial court and, on this language, concluded title to any improvements in that leasehold had not *yet* vested in anyone succeeding the grantee. The situation here is substantially similar and compels the same result regardless of the constraints placed on Blue Knob's ability to remove the building.

Thus, the common pleas court orders are affirmed.

## ORDER

The Bedford County Common Pleas Court orders, dated April 14, 1988, and April 25, 1988, are affirmed.

Judge MACPHAIL did not participate in the decision in this case.

---

[5] In *Venango,* the Court noted that when determining the lessee's tax liability, "[f]requently, the touchstone has been the ability of the lessee to remove the structures." *Id.* at 315, 457 A.2d at 1341.

[6] Blue Knob argues that various sections throughout the lease indicate ownership of the improvement is lacking, *i.e.,* Section 5, paragraph 10 (prohibiting subleasing of leased premises); paragraphs 11 and 15 (limiting use of premises and buildings for purpose of ski resort only); paragraph 14 (requiring Blue Knob to maintain and repair premises); and paragraphs 17 and 20 (prohibiting Blue Knob from modifying leased premises without the Commonwealth's permission). We note these paragraphs appear to refer to the buildings which already existed on the premises when the lease was first executed. Thus, they include the buildings for which Blue Knob *currently pays rent* and, therefore, has no ownership interest. Moreover, the language here governs use of the leased premises. While Blue Knob may own the building, ownership does not preclude an agreement to conform its use of the buildings in accordance with the leasehold provisions