Appeal from the Decision of The **BOARD OF PROPERTY ASSESS-MENT, Appeals, Review and Registry** Regarding Pittsburgh International Airport Tax Exemptions.

**Appeal of West Allegheny School District.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 2001.
Decided May 1, 2002.

Ira Weiss, Pittsburgh for appellant.

John J. Edwon, Sewickley, for appellee, Joll, d/b/a Bain's Deli and Garden Gazebo.

Stanley J. Parker, Pittsburgh, for appellees.

BEFORE: DOYLE, Senior Judge (P.)[1], COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, KELLEY, Senior Judge and LEADBETTER, Judge.

OPINION BY President Judge COLINS.[2]

West Allegheny School District (School District) appeals the orders of the Court of Common Pleas of Allegheny County denying a motion to quash and decreeing that food and beverage establishments at Pittsburgh International Airport, Midfield Terminal Complex are exempt from real estate taxes imposed by Allegheny County, Findlay Township, and the School District.

Allegheny County owns the collective real estate parcels that constitute the Midfield Terminal Complex. The County leases the property to a private entity, BAA Pittsburgh, that constructed concessions and subleased the concessions to commercial enterprises. Pursuant to the subleases, the sublessees are responsible for the payment of real estate taxes, and each concession has a separate tax parcel identifier. The lease between the County and BAA Pittsburgh provides that BAA will indemnify the County from assuming all liability for taxes and assessments on the property. The lease also provides that BAA may contest the applicability, the legality, or the validity of any such taxes or assessments and that the County shall, to the extent permitted by law, execute such documents as necessary to permit BAA to contest or appeal. The subleases between BAA and the commercial enterprises contain similar provisions.

In 1992 when the Pittsburgh International Airport opened for business, all of the parcels were classified as tax exempt. The School District and the Township contested the exempt status of the properties subleased by food and retail businesses. By decision dated March 1, 1999, the Allegheny County Board of Property Assessment, Appeals, Review and Registry placed all of the parcels owned by businesses serving food and beverages into the taxable status; other parcels remained exempt. The Findlay Township, the School District, and fifteen sublessee businesses appealed, which appeals were consolidated

1. This case was heard prior to the date when President Judge Doyle and Judge Kelley assumed the status of senior judge on January 1, 2002.

2. This case was reassigned to this author on February 12, 2002.

for disposition. The Township and School District filed motions to quash the sublessees' appeals challenging their standing.

By order dated January 11, 2000, the trial court denied motions to quash on the basis of Allegheny County Local Rule 502. The trial judge adopted the reasoning advanced by the County that under Rule 502, which governs real estate tax assessment appeals, the caption of the appeal must list the property owners, the municipality and school district in which the property is located, and the County. The Rule further provides that an appeal by any party acts as an appeal by all parties and no appeal may be withdrawn without the consent of all parties. Following the trial court's ruling, the County and BAA Pittsburgh entered into assignment agreements assigning to the sublessees the right to pursue the appeals. Based on his conclusion that the sublessees' use of the public property furthers the purpose of the governmental agency from which they rent the parcels, the judge issued an order directing that the parcels occupied by food and beverage establishments subject to the consolidated appeal are exempt from real estate taxes in tax years from 1994 and 1998 and thereafter.[3]

Before this Court, the West Allegheny School District challenges the trial court's conclusion that the sublessees had standing to appeal the Board's decision placing the parcels into taxable status and its conclusion that those parcels used for the sale of alcoholic beverages and candy were entitled to real estate tax exemption on the ground that they are reasonably necessary for the efficient operation of the airport.

**Standing**

■ As noted by the trial judge, instead of stating who may appeal an assessment,[4] the law popularly known as the Second Class County Assessment Law[5] states, "The board shall adopt rules and regulations governing the right to and the holding of appeals, and the practice and procedure thereat." Section 11, 72 P.S. § 5452.11. In Allegheny County, Rule II, Section 1 of the Rules & Regulations governing assessment appeals states, "Appeals may be taken by taxing jurisdiction or the registered owner of the assessed real estate, or fiduciaries filing appeals as such or a lessee, mortgagee, purchaser, etc." (1–11–00 Trial Court Opinion, attachment 1.) Section 20 of the Second Class County Assessment Law states that the Second Class County law does not repeal any sections of The General County Assessment Law,[6] except where inconsistent therewith. 72 P.S. § 5452.20. The Second Class County Assessment Law is silent as to who may appeal a Board decision to the court of common pleas.

---

**3.** The properties ruled to be exempt from real estate taxes were occupied by the following food and beverage establishments: Ohio Valley Bistro's d/b/a T.G.I. Friday's; ABP Corporation f/k/a Au Bon Pain Co., Inc.; Wyatt Airport Foods, Inc. d/b/a Alberto's Pub and Pizzeria; Danaimee Enterprises, Inc. d/b/a Candy Express; Janisco, Inc. d/b/a Charley's Steakery; Sodrew, Inc. d/b/a Bain's Deli; Debro Enterprises, Inc. d/b/a Auntie Anne's; McDonald's Corporation; Arby's; Frank N' Stein; Steak Escape; Gloria Jean's Executec, Inc. d/b/a The Great Steak 'N Fry Company; Freshen's Yogurt; and Raymond and Lana Joll d/b/a Bain's Deli and Garden Gazebo.

**4.** For example, in counties of the first class, second class A and third class, and fourth to eighth class, the corresponding sections of the assessment laws provide that any person aggrieved by an assessment may appeal. 72 P.S. § 5341.14(a), 72 P.S. § 5349(c), 72 PS. § 5453.701(b).

**5.** Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. §§ 5452.1–5452.20.

**6.** Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§ 5020–101–5020.602.

Section 518.1(a) of the General County Assessment Law,[7] 72 P.S. § 5020–518.1(a), states, "[a]ny owner of real estate or taxable property in this Commonwealth, who may feel aggrieved" may appeal the decision of the Board of Property Assessment, Appeals and Review in counties of the second class to the court. Again, as noted by the trial judge, this Court has determined that the term "owner" includes not only the registered owner of the real estate, but also an equitable owner or owner of a taxable interest in the property. *Baltimore & Ohio Railroad Appeal,* 405 Pa. 349, 175 A.2d 841 (1961) (equitable owner); *Filbern Manor v. Board of Assessment Appeals,* 138 Pa.Cmwlth. 660, 589 A.2d 279 (1991), *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541; *Blue Knob Recreation, Inc. Appeal,* 122 Pa. Cmwlth. 156, 551 A.2d 9 (1988), *petition for allowance of appeal denied,* 522 Pa. 597, 562 A.2d 321 (1989); *contra Marcus Hook Development Park v. Board of Assessment Appeals of Delaware County,* 68 Pa.Cmwlth. 229, 449 A.2d 70 (1982). With the exception of *Baltimore & Ohio,* all of these cases involved leasehold interests in public property.

In 1982 in *Marcus Hook,* we concluded that the lessee had no standing to appeal to court a board decision with respect to a parcel it leased from the borough, the record and beneficial owner, even though the lease obligated the lessee to pay the taxes. We stated,

> [T]he borough as owner has the exclusive right to challenge the assessment, but, in these circumstances, obviously has not chosen to do so. We have been shown no authority giving a lessee such as MHD any basis for appealing in its

own right. Lessees are left to protecting themselves in the negotiation of the lease provisions with a municipality or other public agency.

449 A.2d at 73. Years later in *Blue Knob,* we concluded that the lessee was the owner of the property for tax purposes because the 35-year lease between the lessee and the Commonwealth indicated that "the title to the improvements, as well as the leasehold itself, remains in the lessee during the term." 551 A.2d at 10 (quoting *Venango Federal Savings and Loan Association v. County of Venango,* 73 Pa. Cmwlth. 313, 457 A.2d 1340, 1341 (1983)).[8]

Finally and most recently in *Filbern Manor,* distinguishing *Marcus Hook* and relying on *Blue Knob,* we again concluded that a lessee of public property had standing to appeal an assessment decision to court under Section 518.1 of the General County Assessment Law, 72 P.S. 5020–518.1. In *Filbern Manor* the borough was the record owner of the property in question, which it leased for a 99-year term with the understanding that the lessee would build low-income housing. Subsequently, the taxing authority issued tax assessments for the improved property in the lessee's name, and the lessee paid the taxes. Based on these facts, we concluded as we did in *Blue Knob* that the parties to the lease intended that the lessee was the owner of the leasehold improvements, and therefore, the owner of the "taxable property" as provided in Section 518.1. Summarized, *Blue Knob* and *Filbern Manor* decisions stand for the proposition that the tenant with a long-term leasehold interest in public property is taxable "on the theory

---

**7.** Added by Section 2 of the Act of December 28, 1955, P.L. 917.

**8.** Blue Knob entered into a lease agreement to operate a ski resort on Commonwealth property on which it erected a new lodge in addition to existing buildings, for the use of which it paid an additional rental fee to the Commonwealth.

that he either owns the fee or something equivalent."[9]

Continuing in this direction, we now address the standing under Section 518.1 of the holder of a commercial lease that obligates the lessee to pay the real estate taxes. Each of the sublessees in this matter has entered into a seven-year sublease that obligates it to pay all taxes assessed or levied against the premises.[10] Under the terms of each sublease, upon expiration or termination of the lease term, improvements made by the sublessee become the property of the County as record owner of the terminal and remain in place unless the County requests their removal, in which case the sublessee is obligated to remove them. As in *Blue Knob*, the assessments in this case were issued in the sublessees' names, referencing individual parcel identification numbers.

Although the facts of this case stand in marked contrast with those of *Filbern* and *Blue Knob*, the facts still support a conclusion that the parties to the lease agreements intended that the sublessee is the owner of the parcel for tax purposes because the seven-year commercial sublease indicates that the title to the improvements, as well as the leasehold itself, remain in the lessee during the term.[11] As

in *Blue Knob*, each of the sublessees of public property in this case, is the "owner" of a non-freehold, possessory interest in the taxable property for a term of years,[12] something less than legal or equitable ownership, but ownership nonetheless for the purposes of Section 518.1.[13]

∎ Although we conclude that the term "owner" in Section 518.1(a) includes the sublessees in this case, we must agree with the trial court's conclusion that under Allegheny County Local Rule 502, which governs real estate tax assessment appeals, Allegheny County (in addition to the municipality and school district in which the property is located) must be listed in the caption of the appeal; an appeal may not be withdrawn without the consent of all parties; and the filing of an appeal by any party acts as an appeal by all parties.

## MERITS

∎ As for the trial court's decision on the merits, the School District appeals only the determination with respect to the sublessees selling candy and alcoholic beverages. Apparently accepting the trial court's reasoning with respect to the most of the food and beverage establishments, the School District distinguishes the sale

9. William B. Stoebuck & Dale A. Whitman, The Law of Property, § 6.60 (3rd ed.2000).

10. Some of the leases state that BAA had been advised that the County did not plan to assess real estate taxes against the premises. Other leases state that the sublessee's obligation to pay taxes includes assessments for real estate taxes, which might be billed directly to the sublessee, and state the governmental authorities' per-square-foot estimate of current real estate taxes, subject to adjustment.

11. Of equal importance to our conclusion on this point is that the interests of the County, as record owner of the airport terminal, are not adverse to those of the tax-paying sublessees.

12. Stoebuck & Whitman, § 2.1.

13. While we do not equate equitable ownership created by a contract for conveyance with ownership of a possessory leasehold interest, where "the burden of taxation as between the parties follows possession or the right thereto[,]" the same principles that permit the equitable owner to be subject to real estate taxation and to appeal to court (i.e., ownership of "an estate in the land against which a legal assessment can be made[]") support the right of the owner of a long-term possessory interest to appeal to court after losing before the local board. *Baltimore & Ohio Railroad*, 405 Pa. at 353, 354, 175 A.2d at 843, 844.

of candy and alcoholic beverages as not being necessary to the airport's public use, but rather as being mere conveniences provided to the travelling public. In support of this argument, the School District cites two cases, *Appeal of the Township of Moon*, 387 Pa. 144, 127 A.2d 361 (1956) (*Moon I* ), and *Pier 30 Associates v. School District of Philadelphia*, 89 Pa.Cmwlth. 505, 493 A.2d 126 (1985), for the proposition that commercial uses of public property are taxable when they do not promote, or are not integral to the character of, the property's public use. For this reason, the School District argues that the property occupied by establishments selling candy and those serving alcoholic beverages should not be exempt from real estate taxes. We disagree.

■ The General Assembly may by law exempt from taxation public property that is actually and regularly used for public purposes. Pa. Const. art. VIII, § 2. Section 204(a)(7) of The General County Assessment Law, 72 P.S. § 5020–204(a)(7), exempts from local taxation all public property used for public purposes. Whether property is being used for a public purpose and is therefore entitled to tax exemption is a judicial question for determination by the courts. *Wesleyville Borough v. Erie County Board of Assessment Appeals*, 676 A.2d 298 (Pa.Cmwlth.1996).

In *Moon I*, which considered the taxability of parts of the prior Pittsburgh Airport, the taxing authorities sought to tax concessions leased to private entities. After considering the lessees' business activities, the Supreme Court ruled that some of the commercial activities were tax exempt, such as food and beverage service, trash collection, and catering, but that others, such as retail stores, toy sales, and those selling alcoholic beverages, were not tax exempt because they served only the convenience of the travelling public and were

not needed for the efficient operation of the airport as a public instrumentality. Later in *Moon Township Appeal*, 425 Pa. 578, 229 A.2d 890 (1967) (*Moon II* ), the Court upheld the trial court's conclusion that four properties that had been denied tax exempt status in *Moon I* were reasonably necessary for the efficient operation of the airport. Without changing the legal standard set forth in *Moon I*, the Court in *Moon II* acknowledged that given the evolution of air travel, additional airport facilities and services were required to meet the needs and demands of the traveling public and to make the airport's operation efficient. 425 Pa. at 582, 229 A.2d at 892.

■ "Where the primary and principal use to which property is put is public, the mere fact that income is incidentally derived from the use of the property does not affect its character as property devoted to a public use." *Wesleyville Borough*, 676 A.2d at 302 (Pa.Cmwlth.1996); *Moon II*. As stated by the trial judge in the present matter, when public property is used by a private entity, the key to maintaining the tax exemption is evidence establishing that the lessee's use of the public property is furthering the purpose of the governmental agency from which the lessee rents the property. (1–19–01 opinion, p. 2.)

We agree with the trial court that the evidence establishes that the Pittsburgh Airport was constructed as a hub, that the terminal was constructed with the purpose of attracting airlines by offering increased passenger services, and that the County implemented a concession program using a high quality, mixed use retail model. In contrast with the old terminal, which served primarily travelers who began and ended their flights in Pittsburgh, the new terminal needed to accommodate passengers who would spend time in the terminal between flights and who had limited time

to seek out services. Because of the diversity of passengers and their needs, the hub terminal was meant to provide a wide range of concessions in multiple locations in order to be near gates. The evidence establishes that as leasing agent/manager, BAA Pittsburgh focuses solely on promoting the airport's public purpose, even to the extent of requiring that concessions be open every day, that hours be extended during time when passengers are stranded, and that prices not exceed those charged at non-airport locations.

We also agree with trial court's reasoning that in terms of determining what facilities are reasonably necessary for the efficient operation of the airport, we see no reason to distinguish those that serve particular types of food and beverages.

> [T]here is no justification to find that a facility serving a hamburger, French fries, and a Coke should be treated differently from a facility which serves a cheese steak sandwich and a beer, a facility that serves breakfast rolls and coffee, a facility that serves pretzels and a Coke, or even a facility selling candy that will be consumed by the passengers while they are waiting for their airplane or while traveling on an airplane. Each facility is furnishing food and beverage items that are consumed by the traveling public during the period in which they are traveling to their final point of destination. Consequently they are necessary for the efficient operation of the airport.

(1–19–01 opinion, pp. 22–23.)

Accordingly, the trial court's orders are affirmed.

Judge SMITH–RIBNER dissents.

### ORDER

AND NOW, this 1st day of May 2002, the orders of the Court of Common Pleas of Allegheny County in the above-captioned matter are affirmed.