**WEST MIFFLIN AREA SCHOOL DISTRICT**

v.

**BOARD OF PROPERTY ASSESS-MENT, Appeals and Review of Allegheny County, Pennsylvania,**

**Appeal of Tech One Associates.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2002.
Decided June 26, 2002.

---

Thomas J. Dempsey, Pittsburgh, for appellant.

Dusty Elias Kirk, Pittsburgh, for appellees, Giant Eagle, Inc., National City Bank of PA, et al.

Harvey E. Robins, Pittsburgh, for appellees, McKnight Family Center and Wendy's of Greater Pitts., et al.

BEFORE: PELLEGRINI, J., FRIEDMAN, J., and FLAHERTY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Tech One Associates (Tech One) appeals from the July 17, 2001, order of the Court of Common Pleas of Allegheny County (trial court), which dismissed Tech One's objections to the Masters' Report (Report) and adopted the Report as the final adjudication of Tech One's tax assessment appeal. We affirm.

Tech One owns a certain parcel of real estate located in the Borough of West Mifflin (Borough) and known as Lot and Block 312–L–50 (the Property) in the Deed

Registry Office of Allegheny County. The Property can be characterized as the out parcel acreage surrounding a commercial development known as Century Three Mall. The Property is a reclaimed slag pile that has been developed as commercial property. Over the years, Tech One has subdivided the Property into a series of distinct, contiguous parcels, many of which are occupied by commercial tenants who have varying degrees of responsibility for the payment of real estate taxes. (Trial court op. at 2–3.)

Tech One filed tax assessment appeals with the trial court contesting the tax assessment decision of the Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania (Board) with respect to the tax years 1986 through 1999. The trial court consolidated the appeals. A number of Tech One's tenants have intervened in the appeals because the tenants' leases require them to pay additional rents based on the tax assessments. The tenants who have intervened are: (1) National City Bank, formerly Equibank; (2) Giant Eagle; (3) Wendy's; (4) McKnight Family Center No. 3, or Chuck E. Cheese; and (5) Ames Department Stores, Inc. (collectively, Intervenors). Ames has settled its dispute and is no longer a party to the appeals. (Trial court op. at 3.)

The trial court appointed Masters, who conducted three evidentiary hearings on the matter. Tech One, the Borough and the West Mifflin Area School District (School District) presented a stipulation of the fair market value and assessment for each parcel from 1986 to 1999 (Stipulation). (*See* R.R. at 62a–142a.) Interve-

nors offered expert testimony as to the value of their own individual parcels.

■■■ After considering the evidence, the Masters issued the Report, recommending fair market values and assessed values for each parcel for the tax years 1986 through 1999. With respect to Intervenors' parcels, the Masters accepted the expert testimony presented by Intervenors and recommended fair market values and assessed values that were *less* than those set forth in the Stipulation. As for the other parcels, the Masters adopted the Stipulation and incorporated it into the Report. Tech One filed objections with the trial court, which the trial court dismissed. Tech One then filed an appeal with this court.[1]

Subsequently, Giant Eagle filed an application to participate as a real party in interest in the appeal. Tech One filed objections, which this court treated as a motion to strike Giant Eagle's application. By order dated April 11, 2002, this court granted Tech One's motion because Giant Eagle failed to file a response. Giant Eagle filed a petition for reconsideration, arguing that: (1) this court never notified Giant Eagle prior to issuance of the April 11, 2002, order that it was treating Tech One's objections as a motion to strike; (2) no procedural rule required Giant Eagle to respond to Tech One's objections; and, (3) by granting the motion to strike, this court prematurely decided one of the issues before this court on appeal, i.e., Giant Eagle's status as a party before the trial court. We agree with Giant Eagle. Therefore, we strike this court's April 11, 2002, order, reinstate the application to participate as a real party in interest and, for the reasons that follow, grant the application.

1. This court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law or whether its decision is supported by substantial evidence. *Wilson Area School District v. Easton Hospital,* 561 Pa. 1, 747 A.2d 877 (2000).

## I. Standing of Giant Eagle

Tech One argues that Giant Eagle lacked standing in the appeal before the trial court once Ames discontinued its claim because Giant Eagle was a subtenant of Ames.[2] We disagree.

### A. Effect of Ames Discontinuance

■ Allegheny County Local Rule A503(e) states that "[t]he filing of an appeal by any party shall act as an appeal by all parties." (S.R.R. at 2b.) That being the case, the discontinuance of the appeal by Ames had *no* effect on the continuance of the assessment appeal by other parties. Indeed, Giant Eagle itself was a party, having intervened separately from Ames,[3] and Giant Eagle did *not* discontinue its appeal. (*See* R.R. at 59a–60a, 181a–82a.)

### B. Giant Eagle's Sub-tenant Standing

■ As to whether Giant Eagle had standing as a sub-tenant to appeal a tax assessment, section 518.1(a) of the General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *added by* section 2 of the Act of December 28, 1955, P.L. 917, *as amended*, 72 P.S. § 5020–518.1(a) (emphasis added), states:

Any *owner* of real estate or taxable property in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal from the decision of the ... Board of Property Assessment, Appeals and Review ....

Pennsylvania courts have determined that the word "owner" includes not only the registered owner of the real estate, but also an equitable owner or owner of a taxable interest in the property. *In re Baltimore & O.R.R*, 405 Pa. 349, 175 A.2d 841 (1961); *Filbern Manor Apartments v. Board of Assessment Appeals*, 138 Pa. Cmwlth. 660, 589 A.2d 279 (1991), *appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991); *In re Blue Knob Recreation, Inc.*, 122 Pa.Cmwlth. 156, 551 A.2d 9 (1988), *appeal denied*, 522 Pa. 597, 562 A.2d 321 (1989).

In *In re West Allegheny School District*, 797 A.2d 414 (Pa.Cmwlth.2002), this court held that the holder of a commercial sub-lease that obligates the sub-lessee to pay the real estate taxes has standing to challenge a tax assessment. This court stated that the sub-lessee "is the 'owner' of a non-freehold, possessory interest in the taxable property for a term of years, something less than legal or equitable ownership, but ownership nonetheless for the purposes of Section 518.1." *Id.*, 797 A.2d at 418 (footnotes omitted). Thus, here, Giant Eagle has standing as a sub-tenant of Ames for purposes of section 518.1 of the Law.

## II. Motion to Strike

Tech One argues next that the trial court abused its discretion by failing to

---

2. When Ames filed its Praecipe to Settle and Discontinue with Prejudice, the cover sheet stated that it was filed on behalf of Ames *and* Giant Eagle. (R.R. at 499a.) However, the actual praecipe stated, "Kindly settle and discontinue the above action on behalf of Ames...." (R.R. at 500a.) Counsel for Giant Eagle subsequently wrote a letter to counsel for Ames, pointing out that Giant Eagle was not a party to the settlement, was not bound by it and would insist on full reimbursement of its pro rata share of any tax refund. (S.R.R. at 193b.) In response, counsel for Ames stated that putting Giant Eagle on the cover sheet was an oversight and that the praecipe itself pertained only to Ames. (S.R.R. at 195b.)

3. To the extent that Tech One contends that the trial court erred in allowing Giant Eagle to intervene in this matter, that issue is waived. The record indicates that *all* parties consented, either by telephone or letter, to Giant Eagle's intervention in this tax assessment appeal. (R.R. at 58a.)

sustain Tech One's motion to strike the valuation testimony of National City Bank. We disagree.

National City Bank presented expert testimony regarding the value of its building, but not the value of the land upon which the building is situated.[4] However, the expert testified clearly that the value of the land was set forth in the lease, i.e., $18,000 per year for all of the years in question. (R.R. at 337a.) Because the testimony *did* include the value of the land, it was not an error to deny the motion to strike.

### III. Bias

Tech One also claims that the Masters manifested a predisposed bias to "come down with decisions for one side or the other at its own valuations." (Tech One's brief at 26.) In other words, Tech One maintains that the Masters had a habit of simply picking one side's figures and adopting that side's valuations. Tech One asserts that, instead of ignoring the evidence of one side or the other, the Masters should have weighed the evidence. Tech One contends that, here, the Masters ignored the Stipulation with respect to the parcels of Wendy's and McKnight Family Center No. 3/Chuck E. Cheese.

■ We are not persuaded by this argument. The Masters did *not* ignore the Stipulation. In fact, except for the valuations of Intervenors' properties, the Masters adopted the Stipulation and incorpo-

rated it into its decision. (R.R. at 480a.) Thus, we are unable to conclude that the Masters manifested bias against Tech One or the Stipulation.[5]

### IV. McKnight Remodeling

■ Tech One further argues that the trial court erred by ignoring evidence of extensive remodeling done to the McKnight Family Building in 1998 and 1999. We disagree.

■ In 1998 and 1999, the McKnight Family Center No. 3/Chuck E. Cheese property was converted into a gym called Power House. The Stipulation shows an *increase* in value for those years, but Intervenors' expert testimony indicated that the conversion resulted in a *decrease* in value. The trial court's function in a tax assessment appeal is to determine a value for the property based upon competent and credible evidence. *Green v. Schuylkill County Board of Assessment Appeals*, 730 A.2d 1017 (Pa.Cmwlth.1999), *aff'd*, 565 Pa. 185, 772 A.2d 419 (2001). In that regard, the trial court may accept all, none or part of an expert's testimony. *Id.* Here, the fact finder believed expert testimony that the value of the property *decreased* after the conversion to a gym. That was *not* improper.

### V. Individual Parcel Evidence

■ Tech One next objects to the fact that Intervenors presented evidence only

4. This is because National City Bank's lease with Tech One requires that National City Bank pay the real estate taxes on the building only. In other words, National City Bank needed a finding of the assessment on the building alone in order to know its liability under the lease. Despite its lease with National City Bank, Tech One moved to strike the valuation testimony of National City Bank's expert because it did not take into account the value of the land.

5. We note that, in tax assessment appeals, a stipulation as to the fair market value of land or improvements is merely an evidentiary expedient and does not alter the court's obligation to pass upon and to determine the correctness of the property assessment as a whole. *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 417 Pa. 243, 209 A.2d 394 (1965).

with respect to the value of their individual parcels. Tech One argues that Intervenors were *required* to present evidence as to the value of *every* parcel, or the total value of the *entire* Property. We disagree.

In making this argument, Tech One relies on case law holding that the concern of the court in a tax assessment appeal is the total assessment of the property as a whole. *In re Rieck Ice Cream Co.*, 417 Pa. 249, 209 A.2d 383 (1965). Courts have stated that separate assessments are but an intermediate step towards ascertainment of the taxable value of the property as a whole. *Id.* However, such statements do not preclude intermediate partial assessments of the property; the case law requires only that there be a final valuation of the entire property.[6] *See McKnight Shopping Center, Inc. v. Board of Property Assessment, Appeals and Review of County of Allegheny*, 417 Pa. 234, 209 A.2d 389 (1965) (noting that the proper assessment procedure is to value the property as a whole; however, separate values may be required for portions of the property).

### VI.  Waiver of Right to Appeal

■ Tech One next argues that Intervenors waived their right to appeal because they did not appeal themselves; instead, they sought intervention after Tech One filed an appeal. However, as indicated above, Allegheny County Local Rule A503(e) states that "[t]he filing of an appeal by *any* party shall act as an appeal by *all* parties." (S.R.R. at 2b) (emphasis added). Thus, when Tech One filed an appeal, it acted as an appeal by Intervenors. As such, Intervenors did *not* waive their right to appeal.

Moreover, Tech One's argument presupposes that Intervenors had a right to appeal the assessment as an "owner" under section 518.1 of the Law. The local rules specifically allow for intervention pursuant to the Pennsylvania Rules of Civil Procedure, i.e., where the person could have joined, or been joined, as an original party in the action. Pa. R.C.P. No. 2327(3). As "owners," Intervenors could have joined, or been joined, as an original party in the action. Thus, although Intervenors did not file their own appeal, Intervenors had a right to intervene.

### VII.  Weight of Evidence

Finally, Tech One argues that the assessments for Wendy's and McKnight Family Center No. 3/Chuck E. Cheese are against the weight of the evidence. We disagree.

■ As for Wendy's, Tech One points out that Wendy's expert used an exotic capitalization methodology instead of the usual straight-line capitalization. (Tech One's brief at 39.) However, the expert explained his reasons for using the methodology he chose, and the expert's testimony was accepted by the fact-finder. (*See* R.R. at 251a.) With respect to McKnight Family Center No. 3/Chuck E. Cheese, Tech One again contends that the expert testimony ignored remodeling that enhanced the value of the parcel. However, this was simply another credibility determination by the fact-finder. As such, it was not improper.

Accordingly, we affirm.

### ORDER

AND NOW, this 26th day of June, 2002, the petition for reconsideration filed by

---

**6.** Moreover, we note that a challenge to the valuation of one parcel is a challenge to the total valuation because, as the valuation of one parcel changes, so does the total valuation.

Giant Eagle is granted, and this court's April 11, 2002, order in this case is stricken. Giant Eagle's reinstated application to participate as a real party in interest is granted. In addition, the order of the Court of Common Pleas of Allegheny County, dated July 17, 2001, is hereby affirmed.

## DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority opinion because I disagree that Tech One's tenants and sub-tenants have standing to appeal a real estate tax assessment decision imposing taxes on Tech One.

At issue in this case is a parcel of property located in the Borough of West Mifflin that surrounds a commercial development. The parcel was previously owned by United States Steel Corporation (U.S. Steel) which had filed an appeal to the Board of Property Assessment, Appeals and Review of Allegheny County (Board) from tax assessments on this property. West Mifflin Area School District then filed an appeal with the Court of Common Pleas of Allegheny County (trial court) naming the Borough of West Mifflin and Allegheny County as interested parties. While the appeal was still pending, the property was purchased in May 1986 by Tech One which subdivided the parcel into a series of parcels which it leased to various tenants and sub-tenants. Tenants included National City Bank of Pennsylvania (formerly, Integra Bank), Wendy's International, Inc., McKnight Family Center,

Inc., (formerly, Chuck E. Cheese), and Ames Department Store. Giant Eagle was a sub-tenant of Ames in 1988[1] and leased 38,000 square feet of the building that Ames leased from Tech One. As were some of the other tenants, Giant Eagle was responsible for paying any increase in the real estate taxes over the base year on the portion of the property that it leased.[2]

On March 4, 1988, Tech One also filed an appeal with the trial court from the Board's tax assessment regarding tax years 1986, 1987 and 1988. None of the tenants named above, including Giant Eagle, filed an appeal. However, all of them filed petitions to intervene. The Borough of West Mifflin and Allegheny County's petition was granted on March 17, 1988; Integra Bank and Giant Eagle's[3] petitions were granted on May 15, 1996; Wendy's petition and McKnight Family Center's petition were granted on June 30, 1999; and Ames' petition was granted on August 23, 1999. On June 3, 1999, Tech One, West Mifflin Area School District and the Borough of West Mifflin entered into a Stipulation of Facts regarding the assessed value and the market value for the various properties, including those which Intervenors leased.

After appointing Masters to conduct evidentiary hearings, on October 23, 2000, Ames settled its claims in the tax assessment appeal and the matter was discontinued with prejudice. Thereafter, on July 18, 2001, the trial court adopted the Masters' report which accepted the expert testimony presented by the Intervenors and

---

1. Giant Eagle actually sub-leased space from Ames since 1972 at which time U.S. Steel owned the property and leased it to Ames. Giant Eagle continued to lease space from Ames through 1997.

2. National City Bank is responsible for the real estate taxes on its building but not on the land, and Wendy's is responsible for the real

estate taxes on its building and a portion of the land.

3. Giant Eagle specified in its petition that Tech One's appeal of the 1986–1988 assessments was deemed to be an appeal of subsequent annual assessments so long as the appeal remained pending.

recommended fair market values and assessed values that were less that those set forth in the Stipulation of Facts offered by Tech One. Tech One then filed an appeal with this Court arguing, *inter alia*, that Giant Eagle lacked standing to intervene in the appeal before the trial court.

On appeal, the majority affirms the trial court and also holds that Giant Eagle has standing as a sub-tenant to appeal a tax assessment because it is an "owner" of taxable property as that term has been interpreted by Pennsylvania courts. It then further relies on this Court's recent holding in *In re West Allegheny School District*, 797 A.2d 414 (Pa.Cmwlth.2002), that the holder of a commercial sub-lease that was obligated to pay real estate taxes had standing to challenge a tax assessment. Because I disagree with our holding in *West Allegheny*, which, in effect, allows every tenant in a commercial setting that has a lease which contains a pass-through clause for taxes the right to appeal an assessment, I respectfully dissent.

Prior to our decision in *West Allegheny*, there were only a handful of cases dealing with the issue of whether a tenant could file an appeal from a tax assessment against the owner of the leased property. While several cases allowed such an appeal when the lessee of the property had an equitable interest as a result of improving the property, *e.g.*, *see In re Blue Knob Recreation, Inc.*, 122 Pa.Cmwlth. 156, 551 A.2d 9 (1988), *petition for allowance of appeal denied*, 522 Pa. 597, 562 A.2d 321 (1989), *Filbern Manor v. Board of Assessment Appeals*, 138 Pa.Cmwlth. 660, 589 A.2d 279 (1991), *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991), only two cases actually dealt with tenants who had no equitable interest, but those cases had opposing outcomes and

dealt with third class counties while Allegheny County is a second class county.

In *Marcus Hook Development Park, Inc. v. Board of Assessment Appeals of Delaware County*, 68 Pa.Cmwlth. 229, 449 A.2d 70 (1982), we held that Marcus Hook Development, which leased property from the Borough of Marcus Hook, did not have standing to appeal an assessment to the Borough because the Borough was the real owner of the property and Marcus Hook was only the lessee, even though it was obligated to pay the taxes to or on behalf of the Borough. We relied on Sections 8 and 9 of the Assessment Law for Counties of the Second Class A and Third Class [4] which describe persons entitled to appeal to the assessment board as the "owner of property," "any person aggrieved," and allowed appeals to be taken by a "taxable" and a "taxpayer" to determine that the lessee did not meet any of those definitions. We stated:

> Here the borough is the real owner, as owner of record and beneficial owner as well. [Marcus Hook], as lessee, although obligated by lease to pay the taxes to or on behalf of the borough, does not, by virtue of that lease provision, become the taxpayer in the place of the borough.

> \* \* \*

> We have been shown no authority giving a lessee such as [Marcus Hook] any basis for appealing in its own right. Lessees are left to protecting themselves in the negotiation of the lease provisions with a municipality or other public agency.

> We therefore must disagree with the court of common pleas that the appeals filed by [Marcus Hook] with respect to the entire property and with respect to

---

4. Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5349–50.

the borough parcel were effective to bring up for review before the board or court that part of the property held by the borough as owner. *Id.* at 73. In sharp contrast, however, in *In re Appeal of Marple Newtown School District,* 70 Pa.Cmwlth. 365, 453 A.2d 68 (1982), we relied on the same sections of the County Assessment Law for Second Class A and Third Class Counties and held just the opposite: that the lessee of a shopping center that was obligated to pay real estate taxes had standing to appeal an assessment against the owner of the shopping center because the lessee was a person aggrieved as provided for under Section 8 of the Law. "It would seem that Pennsylvania Plazas as a tenant required to pay the local taxes would meet this description and was entitled to appeal the assessment to the Board of Assessment Appeals." *Id.* at 69.

While I would follow the rational of *Marcus Hook,* the problem with both of these cases is that Allegheny County does not fall under the sections cited because they only apply to Second Class A and Third Class counties and Allegheny County is a county of the Second Class. *West Allegheny* is the only case that deals with a Second Class county and it explains that the Second Class County Assessment Law[5] does not set forth who may appeal a Board decision to the trial court. In that case, Allegheny County leased property at the Pittsburgh International Airport to a private entity that subleased concessions to commercial enterprises that individually paid real estate taxes. Noting that the Second Class County Assessment Law did not repeal any sections of the General County Assessment Law, *see* 72 P.S. § 5452.20, it then relied on Section 518.1(a) of the General County Assessment Law[6]

to find that the term "owner" included sublessees, and that the sublessees of concessions had standing to appeal tax assessments made to the County. That section provides in relevant part:

> (a) Any *owner of real estate or taxable property* in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal from the decision of the county commissioners, acting as a board of revision, or the board of revision of taxes, or the board for the assessment and revision of taxes, or the Board of Property Assessment, Appeals and Review, in counties of the second class ... (Emphasis added.)

72 P.S. § 5020–518.1(a). To determine who was an owner, we relied on cases such as *Filbern Manor* involving a Third Class county and *In re Appeal of Marple Newtown School District,* 70 Pa.Cmwlth. 365, 453 A.2d 68 (1982), involving a Second Class A county and governed by provisions dealing with Third Class and Second Class counties. Allegheny County is a Second Class county and the Second Class County Assessment Law has no similar provision.

The General County Assessment Law does not define the term "owner" which controls and, therefore, it must be interpreted in accordance with its ordinary usage. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). "Owner" is defined as "one that has legal or rightful title whether the possessor or not." Webster's Third New International Dictionary 1612 (1993). Because an owner is only a "title owner," lessees, and certainly sublessees, are not given standing to appeal.

---

**5.** Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. §§ 5452.1–5452.20.

**6.** Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020.581.1(a).

Practically speaking, buildings are assessed the same way that they are developed and/or sold, i.e., on a recognized subdivision or as a part of a parcel where separate ownership is authorized by statute such as with condominiums. For example, in a large office building, there is only one tax assessment, not individual assessments for each individual tenant who may have a lease requiring it to be responsible for real estate taxes. Most leases now have pass-through clauses for taxes, and to allow every individual tenant in a large office building the right to challenge the taxes assessed on the building's owner would create a legal morass.

While I realize that *West Allegheny* is controlling, I disagree with that holding and disagree that a sub-tenant or any tenant, for that matter, has standing to challenge the assessment against Tech One and respectfully dissent.