**DALLAS CENTRAL APPRAISAL DISTRICT, Appellant**

v.

**MISSION AIRE IV, L.P., Mission Aire V, L.P. and KPI Properties, Inc., Appellees.**

No. 05–07–01595–CV.

Court of Appeals of Texas, Dallas.

March 11, 2009.

David T. Moran, Jackson & Walker, L.L.P., Michael Allan Lang, Peter G. Smith, Nichols, Jackson, Dillard, Hager & Smith, L.L.P., Dallas, for appellant.

Rick L. Duncan, John Brusniak, Jr., Christina W. Perrone, Brusniak Blackwell, P.C., Dallas, for appellee.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion by Justice FITZGERALD.

Mission Aire IV, L.P., Mission Aire V, L.P., and KPI Properties, Inc. ("tenants") lease property within the Addison Airport from the Town of Addison. Pursuant to their leases, they have built improvements on that property at their own expense.

The question presented is who owns those improvements for purpose of taxation under the property tax code. If the tenants own them, they are liable for property taxes on them. If the Town owns them, the improvements are tax exempt. The trial court granted summary judgment in favor of the tenants, concluding that the Town owns the improvements. We conclude that the evidence establishes conclusively that the tenants own the improvements for the duration of their leases, and we accordingly reverse the summary judgment and render judgment in favor of the Dallas Central Appraisal District.

## I. BACKGROUND

The Town of Addison has owned the Addison Airport since December 30, 1976. From shortly thereafter until roughly December 31, 2000, a company called Addison Airport of Texas, Inc. ("AATI") operated the Addison Airport pursuant to an Operating Agreement. The Operating Agreement included a lease of the entire airport to AATI.

Each appellee is the tenant in a long-term ground lease of a tract within the airport. Each ground lease was originally a sublease under the lease contained within the Operating Agreement. KPI Properties, Inc. is the successor tenant in a forty-year ground lease that commenced no later than September 30, 1983. Mission Aire IV, L.P. is the original tenant in a forty-year ground lease that commenced on July 1, 1997. Mission Aire V, L.P. is the original tenant in a forty-year ground lease that commenced on January 1, 2000. In each case, the ground lease reflected that the tenant would be responsible for building necessary improvements on the leased tract. And in each case, the tenant did build certain improvements for commercial uses related to the airport.

In or about May 2005, the DCAD notified the tenants of the assessed values of the improvements on their leased tracts. The tenants filed protests with the Appraisal Review Board of Dallas County, claiming, among other things, that they did not own the improvements. The tenants argued that the improvements were actually owned by the Town and were therefore exempt from taxation. The Appraisal Review Board ruled against the tenants, which then filed their Original Petition for Review of Appraisal Review Board Order in district court. They later amended their petition to include 2006 when the DCAD notified them of the assessed values of the improvements again in 2006.

The tenants filed a motion for summary judgment, arguing that the evidence established as a matter of law that the improvements are owned solely by the Town of Addison and are therefore tax exempt. The DCAD filed a cross-motion for summary judgment, arguing that the tenants owned the improvements as a matter of law, rendering the improvements not tax exempt. The trial court granted the tenants' motion and denied the Town's motion. The DCAD appealed, and it presents two issues in which it contends that the trial court erred both in granting the tenants' motion and in denying the DCAD's motion.

## II. STANDARD OF REVIEW

We review the trial court's summary judgment de novo. When both parties move for summary judgment, each bears the burden of establishing that it is entitled to judgment as a matter of law. If the trial court grants one motion and denies the other, the non-prevailing party may appeal the granting of the prevailing party's motion as well as the denial of its own motion. We review the summary-judgment evidence presented by both par-

ties and determine all questions presented. We may affirm the trial court's summary judgment, reverse and render judgment for the other party if appropriate, or reverse and remand if neither party has met its summary-judgment burden. *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 164–65 (Tex.App.-Dallas 2008, no pet.).

■ To defeat a plaintiff's cause of action on a traditional summary-judgment motion, a defendant must either conclusively negate an element of the plaintiff's claim or conclusively establish every element of an affirmative defense. To win summary judgment on its own cause of action, a plaintiff must establish every element of its claim as a matter of law. Evidence favorable to the nonmovant must be taken as true, and every reasonable inference from the evidence must be drawn in favor of the nonmovant. *Id.* at 165.

### III. ANALYSIS

The question presented is whether the evidence established conclusively who "owns" the improvements on the leased tracts as that term is used in the property tax code, found in title 1 of the Texas Tax Code. TEX. TAX CODE ANN. § 1.01 (Vernon 2008). We conclude that the evidence conclusively establishes that the tenants own those improvements until their leases expire. Accordingly, the trial court should have denied the tenants' motion for summary judgment and granted the DCAD's motion.

### A. Law governing ownership of improvements

The Texas Property Tax Code recognizes that improvements and land are separate estates or interests that can be owned by different owners for tax purposes. TEX. TAX CODE ANN. § 25.04; *id.* § 25.08(c); *Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 837 (Tex.App.-Austin 2004, no pet.). "[W]hen different persons own land and improvements in separate estates or interests, each separately owned interest shall be listed separately in the name of the owner of each," unless otherwise provided elsewhere in the code. TEX. TAX CODE ANN. § 25.04; *see also Signature Flight*, 140 S.W.3d at 837. In this case, the DCAD listed the tenants on its tax rolls as the owners of the improvements, sparking this controversy.

In *Signature Flight*, the Austin Court of Appeals noted that the tax code does not define the essential terms "own" and "owner." 140 S.W.3d at 839. The court concluded that the plain meaning of "own" is to have legal or rightful title to the property in question. *Id.* at 840. The court also acknowledged some authority that the holding of equitable title, meaning the present right to compel legal title, is also sufficient to constitute "ownership" for tax purposes. *Id.*

The *Signature Flight* court also reviewed the case law and concluded that improvements on leased property are generally considered to be "owned" by the landowner for taxation purposes unless (1) the parties have an understanding that the improvements are not permanently annexed to the land, (2) evidence shows that the improver intended the improvements to remain personalty with the right to be removed, or (3) the parties contractually determine the ownership of the improvements on leased property contrary to the general rule. *Signature Flight*, 140 S.W.3d at 838; *see also Bexar Appraisal Dist. v. Dee Howard Co.*, No. 04–96–00085–CV, 1997 WL 30884, at *2–3 (Tex. App.-San Antonio Jan. 29, 1997, writ denied) (not designated for publication) (resolving ownership of improvements on leased tract by reference to terms of lease

agreement). The *Signature Flight* court concluded that, on the facts and under the lease involved in that case, legal title to the improvements rested in the City of Austin and not the tenants. *Signature Flight*, 140 S.W.3d at 839–42. Accordingly, the improvements were tax exempt. *Id.* at 845. In *Dee Howard Co.*, the court considered different facts and different contractual language and concluded that the tenant, not the City of San Antonio, owned the improvements on the leased premises. *Dee Howard Co.*, 1997 WL 30884, at *2–3. Accordingly, the improvements were not tax exempt. *Id.* at *3.

In this case, no one argues that the tenants have any right to remove the improvements they have built, so the question presented becomes one of contract interpretation—did the parties agree that the tenants would "own" the improvements for the durations of the leases?

**B. Interpretation of the ground leases**

■ We apply familiar rules of contract interpretation in our review of the relevant documents. Our goal is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id.*

**1. The "Title to Improvements" clause**

■ The Town rests its case on paragraph 26 of the ground leases, which is entitled "Title to Improvements" in all three leases. Paragraph 26 of the KPI Properties lease provides, "Any and all improvements on the demised premises shall become the property of Landlord upon the expiration or termination of this Lease," with certain provisos not relevant

to this case. Paragraph 26 of the two Mission Aire leases provide, "Any and all improvements on the Leased Premises shall become the property of the Landlord upon the termination of the Lease," again with certain provisos not relevant to our analysis. According to the Town, the phrase "shall become" in all three leases clearly manifests the parties' intention that the improvements shall not be the landlord's property until the leases end. Thus, argues the Town, it follows that the improvements must be owned by the tenants until that event comes to pass. The tenants, by contrast, argue that paragraph 26 does not concern ownership of the improvements at all, but relates only to possession of the improvements and to the time when the right to possession transfers.

The *Signature Flight* and *Dee Howard Co.* cases cited above are factually similar, although each involved slightly different contractual language. In *Signature Flight*, the lease provided, "Legal title to the Facilities constructed by Tenant shall be held by the City after acceptance of the Facilities by the City...." 140 S.W.3d at 839. Because it was undisputed that the City accepted the facilities no later than 2000, the court of appeals affirmed summary judgment that the tenant did not "own" the improvements after that date. *Id.* at 845. In *Dee Howard Co.*, the lease provided that "all buildings existing upon the leased premises at the commencement of this lease are the property of [tenant] and that title to certain buildings shall vest in [landlord] upon" certain dates set forth in the agreement. 1997 WL 30884, at *2. The court of appeals held that this clause unambiguously made the tenant the "owner" of the improvements until the stated dates had passed. *Id.* at *3. Perhaps contrary to these decisions is the opinion in *Simmons & Co. Holdings, Inc. v. Hous-*

*ton Independent School District,* No. 01–97–00691–CV, 1999 WL 442141 (Tex.App.-Houston [1st Dist.] June 29, 1999, no pet.) (not designated for publication). Although the lease in that case provided that "title to all improvements" built during the lease term "shall vest in the City" at the expiration of the lease, the lease also incongruously but specifically stated that the lease of the premises included the improvements then existing or built in the future. *Id.* at *2. The court of appeals held that the City of Houston was the owner of the improvements under that lease, not the tenant. *Id.*

The parties marshal other authorities to support their contrary interpretations of paragraph 26. The DCAD relies on several cases from other jurisdictions. *See, e.g., Commissioner v. Hills Corp.,* 115 F.2d 322 (10th Cir.1940); *Roach v. Matanuska Valley Farmers Coop. Ass'n,* 87 F.Supp. 641 (D.Alaska 1949), *aff'd,* 188 F.2d 162 (9th Cir.1951); *Louisville Garage Corp. v. City of Louisville,* 303 Ky. 553, 198 S.W.2d 40 (1946); *In re Blue Knob Recreation, Inc., Assessment Appeal,* 122 Pa.Cmwlth. 156, 551 A.2d 9 (1988). In *Roach,* for example, a lease authorized the tenant to build a building on the leased land and provided that the building "shall be and become the property of the [landlord] at the expiration of this lease." 87 F.Supp. at 643–44. Analyzing the tax consequences of this clause, the court held that "[t]he only reasonable conclusion which can be drawn from that language is that until the date of expiration of the lease the buildings are the property of the [tenant]." *Id.* at 646. Accordingly, the court ordered the tenant to pay the property taxes on the building, leaving the landowner to pay the property taxes on the land. *Id.* at 648.

The tenants rely on a Texas Attorney General opinion and cases from other jurisdictions. *See, e.g.,* Op. Tex. Att'y Gen. No. O–4661 (1942) [1]; *Maricopa County v. Novasic,* 12 Ariz.App. 551, 473 P.2d 476 (1970); *People ex rel. Int'l Nav. Co. v. Barker,* 153 N.Y. 98, 47 N.E. 46 (1897). In *Barker,* for example, a lease required the tenant to build a shed on leased property and further provided "[s]aid shed to become the property of [the landowner]" upon expiration of the lease. *Barker,* 47 N.E. at 46. The New York Court of Appeals held that the use of the word "become" was not sufficient to show an intent to separate ownership of the improvements from ownership of the land; instead, the court concluded, the parties added the phrase in question to clarify that the tenant had no right to remove the improvement at the end of the lease, even though the tenant had to build it at its own expense. *Id.* at 47.

We conclude that paragraph 26, read as a whole, has only one reasonable meaning—that title to the improvements would not pass to the Town until the end of the lease. In addition, the paragraph's heading "Title to Improvements" supports this conclusion. *Cf. E.H. Perry & Co. v. Langbehn,* 113 Tex. 72, 252 S.W. 472, 474 (1923) ("The title, like every other portion of a contract, may be looked to in determining its meaning."). The specific reference to "title" to the improvements makes this case very similar to *Signature Flight* and *Dee Howard Co.,* and we follow those cases in concluding that paragraph 26 supports the DCAD's position that title to the improvements would not pass to the Town until the leases ended.

**1.** Available online at http://www.oag.state.tx. us/opinions/opinions/38mann /op/1942/pdf/gm4661.pdf.

We deem *Simmons & Co.* less apposite and less persuasive. Although the lease in that case included a "title shall vest" clause that was similar to paragraph 26, it also included a clause providing that the landowner "lease[d] and grant[ed] unto Lessee" the leased premises "including the present and future improvements located or constructed thereon." *Simmons & Co.*, 1999 WL 442141, at *2. This clause created a conflict with the title clause that has no parallel in the instant ground leases. Moreover, the *Simmons & Co.* court did not even analyze the possible effect of the title clause on the question of ownership, so its analysis and conclusion that the tenant did not own the improvements is less persuasive.

## 2. Other lease provisions

Of course, we cannot end our inquiry after analyzing paragraph 26 by itself. We must consider the ground leases in their entirety before we can interpret them. *See Coker*, 650 S.W.2d at 393 ("[C]ourts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.") (emphasis omitted). The tenants argue that several other lease provisions, taken together with paragraph 26, demonstrate that their interest in the improvements is merely a possessory interest rather than an ownership interest. The DCAD argues that paragraph 26 vests ownership of the improvements in the tenants, even when read in conjunction with the other provisions of the ground leases.

■ The only other lease provision relied on by the DCAD is paragraph 10, entitled "Property Taxes and Assessments." Paragraph 10 of the KPI Properties ground lease provides, "Tenant shall pay any and all property taxes or assessments levied or assessed on the improvements on the demised premises, the per-sonal property and fixtures on the demised premises, and, if applicable, upon the leasehold estate of Tenant created hereby." Paragraph 10 of the two Mission Aire ground leases provides, "Tenants shall pay any and all property taxes and assessments levied or assessed on the improvements on the Leased Premises, the personal property and fixtures on the Leased Premises, and, if applicable, upon the leasehold estate of Tenant created hereby." The DCAD points out that paragraph 10 allocates the duty to pay property taxes on the improvements to the tenant, which is consistent with the DCAD's interpretation of paragraph 26 to vest ownership of the improvements in the tenant. We note also that paragraph 10 refers separately to the "improvements" and to the "leasehold estate" of the tenant, which further suggests that the improvements are distinct from, rather than part of, the tenants' leasehold estate.

The tenants argue that the Town's present ownership of the improvements is supported by lease provisions that incorporate by reference the now-expired Operating Agreement between the Town and AATI. *See Pratt–Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 831–32 (Tex.App.-Dallas 2003, pet. denied) (noting that "instruments pertaining to the same transaction may be read together to ascertain the parties' intent"). From roughly 1977 through the end of the year 2000, AATI (or its predecessor) leased the entire airport from the Town and operated it for the Town pursuant to the Operating Agreement. Thus, the tenants' ground leases were actually subleases of the Operating Agreement at the time of their execution. The tenants point to section 4 of the Operating Agreement as demonstrating the Town's intent to own both the real property and all improvements. Section 4 provides:

> [AATI] agrees to yield and deliver peaceably to the [Town] possession of

the Leased Premises together with all buildings, structures, improvements, additions and other installations therein or thereon, on the date of the expiration of this Agreement.

Paragraph 1 of each of the tenants' ground leases incorporates the Operating Agreement by reference and further contains a promise by the tenant to "fully comply at all times and in all respects with the terms and conditions of the [Operating Agreement] insofar as the same relates to" the particular tract being leased by the tenant.

We agree with the DCAD that section 4 of the Operating Agreement does not manifest an intention by the Town to own all improvements built at the airport. The Operating Agreement is, in part, a lease of the entire airport to AATI, and section 4 simply provides that tenant AATI will yield possession of the airport back to its owner, the Town, at the end of the Agreement. Some years after the Town and AATI's predecessor executed the Operating Agreement, the tenants executed the ground leases as subleases to the Operating Agreement, and both AATI and the Town signed the ground leases. The ground leases gave the tenants the right to possess and use their leased tracts and any improvements they built thereon for terms of forty years, well beyond the expiration of the Operating Agreement. Thus, we conclude that, by operation of paragraph 1 in the ground leases, the tenants simply assumed AATI's duty under section 4 to return possession of the leased premises to the Town, with the improvements, at the ends of their respective lease terms. Nothing in paragraph 1 of the ground leases or section 4 of the Operating Agreement casts any doubt on our conclusion that paragraph 26 vests title to the improvements in the tenants for the durations of their ground leases.

■ Finally, the tenants cite a number of provisions in their ground leases that limit their rights in the leased premises, contending that these limitations are inconsistent with the interpretation that they own the improvements. These provisions include the following:

- The tenants may not make alterations, additions, or improvements without the Town's prior written consent.
- The Town has the right to enter the leased premises during normal business hours in order to inspect and market them.
- The tenants must insure the premises at their own expense, and the Town is entitled to receive the insurance proceeds in the event of a casualty. (The Town was required, however, to disburse the proceeds as necessary to pay for the restoration of the premises.)
- The tenants may not assign their leases or sublet any part of the leased premises without the Town's consent.
- The tenants must maintain the leased premises in good repair and condition, and the Town may order repairs and maintenance at the tenants' expense if the tenants fail to do so.
- The tenants must obtain the Town's permission before installing equipment or advertising signs on the leased premises.

The San Antonio Court of Appeals considered similar restrictions in the *Dee Howard Co.* case but concluded that they did not contradict the lease provision establishing the tenant's ownership of the improvements. 1997 WL 30884, at *3. So too did the Pennsylvania Commonwealth Court on similar facts in the *Blue Knob* case. 551 A.2d at 10 n. 6. The *Blue Knob* court explained, "While [the tenant] may own the building, ownership does not preclude an agreement to conform its use of the building in accordance with the leasehold provisions." *Id.* Accordingly, the court affirmed the lower court's order con-

firming the tenant's ownership of the improvement and obligation to pay property taxes on it. *Id.* at 9.

### 3. Conclusion

We conclude as a matter of law that the ground leases vest ownership of the improvements in question in the tenants for the duration of their ground leases.

## C. Other evidence relating to ownership

The DCAD argues that the trial court erred by overruling the DCAD's objections to certain summary judgment evidence filed by the tenants. One exhibit was a letter from counsel for the DCAD to the director of the DCAD. The letter appears to relate to a different case involving a similar lease at the Addison Airport. In that letter, the attorney concludes that the tenant held only a leasehold interest in the improvements and thus that the improvements are tax exempt. The DCAD also complains about statements in three affidavits filed by the tenants in which the affiants declare that the tenants' "ownership interest in the Improvements is a leasehold interest only." The DCAD argues, among other things, that all of these statements by counsel and the affiants are legal conclusions that are not competent summary judgment evidence. We agree with the DCAD.

Legal conclusions in summary judgment affidavits are not competent evidence. *Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984); *Green v. Unauthorized Practice of Law Comm.,* 883 S.W.2d 293, 297 (Tex.App.-Dallas 1994, no writ). For example, an affiant's conclusions "as to the legal effects of [a] lease" are not competent summary judgment evidence. *Howe v. Kroger Co.,* 598 S.W.2d 929, 931 (Tex.Civ.App.-Dallas 1980, no writ). The portions of the tenants' evidence described above were legal conclusions, and we can give them no weight in

our analysis. The tenants point out that the DCAD filed an affidavit that contains a similarly conclusory statement that the improvements are "owned by the Tenants." This statement is an incompetent legal conclusion, just like the contrary statements put in evidence by the tenants; we do not agree with the tenants that the DCAD waived its objection to the tenants' conclusory evidence by trying to rebut it with similar evidence of its own.

## D. Conclusion

The evidence established as a matter of law that the tenants are the owners of the improvements in question for tax purposes. The trial court should have granted the DCAD's motion for summary judgment and denied the tenants' motion.

## IV. DISPOSITION

We reverse the judgment of the trial court and render judgment that appellees take nothing on their First Amended Petition for Review of Appraisal Review Board Order.