# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bay Harbor Marina Limited
Partnership,
                    Appellant

        v.

Erie County Board of Assessment
Appeals, and The School District
of the City of Erie, and City of Erie

:
:
:
:
:
:
:
:
:
:
:   No. 1377 C.D. 2016
:

Marina Holdings Limited, and Bay
Harbor Marina Limited Partnership

        v.

Erie County Board of Assessment
Appeals, and The School District
of the City of Erie, and City of Erie

Appeal of: Marina Holdings Limited

:
:
:
:
:
:
:
:
:
:
:
:   No. 1387 C.D. 2016
:

Marina Holdings Limited and Bay
Harbor Marina Limited Partnership

        v.

Erie County Board of Assessment
Appeals, The School District of the
City of Erie and the City of Erie

Appeal of: The School District of the
City of Erie

:
:
:
:
:
:
:
:
:
:
:
:   No. 1388 C.D. 2016
:

Marina Holdings Limited and
Bay Harbor Marina Limited
Partnership

        v.

:
:
:
:
:
:
:

Erie County Board of Assessment : 
Appeals, The School District of the : 
City of Erie and the City of Erie : 
 : 
 : 
Appeal of: The School District of the : No. 1389 C.D. 2016
City of Erie : 

Bay Harbor Marina Limited Partnership : 
 : 
v. : 
 : 
Erie County Board of Assessment : 
Appeals, The School District of the : 
City of Erie and the City of Erie : 
 : 
 : 
Appeal of: The School District of the : No. 1390 C.D. 2016
City of Erie : 

Bay Harbor Marina Limited : 
Partnership : 
 : 
 : 
v. : 
 : 
 : 
Erie County Board of Assessment : 
Appeals and The School District of : 
The City of Erie and the City of : 
Erie : 
 : 
 : 
Appeal of:  The School District of the : No. 1391 C.D. 2016
City of Erie : Argued: April 6, 2017


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                              FILED: January 10, 2018

Bay Harbor Marina Limited Partnership (Bay Harbor) and Marina Holdings Limited (Marina Holdings) (collectively, Lessees) appeal from the Erie County Common Pleas Court's (trial court) July 13, 2016 order that denied Lessees' summary judgment motions and granted the Erie County Board of Assessment Appeals (Board), the City of Erie (City) School District (District), and the City's summary judgment motions. The District cross-appeals from the trial court's July 13, 2016 order and appeals from the trial court's July 18, 2016 order that denied the District's motion to assign burdens of proof to Bay Harbor and Marina Holdings. There are six issues for this Court's review: (1) whether Lessees of the Erie-Western Pennsylvania Port Authority (Authority), a Commonwealth agency, have standing to seek tax immunity and exemption; (2) whether the Authority is or should be a party to the tax appeal; (3) whether the Authority's marina properties are immune and/or exempt from taxation; (4) whether the trial court should have examined each parcel and individual part thereof to determine if their public access areas were exempt from taxation; (5) whether the District's cross-appeals are properly before this Court; and, (6) whether the trial court's July 18, 2016 order is an appealable order.

The Authority is a third class port authority organized under the Third Class City Port Authority Act (Act).[1] It leased two parcels of its property – Bay Harbor West and Bay Harbor East (collectively, Parcels) – to Marina Holdings and Bay Harbor, respectively. The trial court described the Parcels as follows:

> Both Bay Harbor West and Bay Harbor East operate as private gated marinas for pleasure and recreational craft. Bay Harbor West consists of approximately 8.8 acres, including water lots. There are approximately 229 slips available for lease. Two buildings are located on the Bay Harbor West property, one of which houses bath/restroom facilities and a commercial restaurant. Bay Harbor leases a

---

[1] Act of December 6, 1972, P.L. 1392, 55 P.S. §§ 571-585.

2

portion of the Bay Harbor West property and first building to Litz Enterprises, LLC, t/d/b/a Jr's on the Bay ('Sloppy Duck'). Rent ranges from $44,820.00 to $48,708[.00] for 2016. Bay Harbor also leases a portion of the second building to a commercial mechanic business, which pays $2,200[.00] per quarter. The remainder of the second building is utilized as an office for both Bay Harbor entities.

Bay Harbor East consists of approximately 12 acres. There are three docks and 236 slips located on the property. There is also a parking lot and bathhouse and vending area for tenants.

Boat slips in Bay Harbor West and Bay Harbor East are leased to private tenants on an annual basis. Once a slip is assigned to a tenant, that tenant may renew his/her membership year-to-year. Tenants are selected on a first-come, first-serve basis and members of the public may become members if dockage is available.

Both marina areas are fenced and locked. Access requires a key device. The leases with the [] Authority provide for [] Authority approval of the fence at Bay Harbor East and installation of a fence at Bay Harbor West. Parking is located within the fenced areas of both marinas. Public parking is located outside of the fence on the southern portion of Bay Harbor West. Marina member amenities, including bathhouse facilities, picnic shelters, fish cleaning station and port-a-potties are not available to the general public. Furthermore, various postings on both properties exclude entry by the general public.

Use of both marinas is limited to members and their family/friends, except for limited public access areas. Public access at Bay Harbor West includes a walkway along the eastern edge of the property allowing the public to walk to the water. Another form of public access at Bay Harbor West is a boat launch that provides public access to the bay. Public transient boaters who use the boat launch may not moor their boats in the marina area, although they may use slips for a fee. Bay Harbor has a courtesy dock allowing members and the general public to briefly dock their boats and move their trucks/trailers to the launch to remove their boats.

Public access to Bay Harbor East consists of a public access walkway [] maintained by Bay Harbor along the eastern and northern perimeter of Bay Harbor East. There is no public boat launch. For a fee, transient boats may use one of six open slips.

Trial Ct. Op. at 3-4 (footnotes omitted).

The Authority does not use or occupy the Parcels, is not involved in the daily operations, decision-making, policy administration, rule enforcement or membership criteria/approval of the entities using the Parcels. Each of Lessees' leases provides, in relevant part:

4. Taxes, Utilities and Assessments.

(a) The [l]eased [p]remises are not subject to any taxes or assessments as they have been acquired and have been used and will continue to be used to further and effectuate the Lessor's authorized purposes. Nonetheless, in the event of a change in law, an agreement between [the Authority] and Lessee pursuant to which a payment in lieu of taxes is to be made with respect to the [l]eased [P]remises (which payment agreement shall be approved in writing by the Lessee in advance), or a determination by a court or governmental body with jurisdiction that any tax or assessment may be chargeable against the [l]eased [p]remises, the following subparagraphs shall control the determination of liability for any taxes or assessments.

(b) **The Lessee shall pay all taxes (including but not limited to real estate taxes) and assessments, if any, upon or against the [l]eased [p]remises by any governmental entity by reason of the occupancy of the [l]eased [p]remises by the Lessee** regardless of whether or not Lessee occupies the [l]eased [p]remises during the entire period of such assessment. Lessee shall also pay all water and sewer rental charges commencing with the commencement date of the Lease term (such items for the current Year to be prorated as of such commencement date), all utility and telephone charges, and all expenses necessary for the maintenance of the [l]eased [p]remises during the term of the lease and any and all renewals thereof.

(c) **The Lessee shall have the right in good faith to contest or review by legal proceedings or in such other manner as it deems suitable, which proceedings, if instituted, shall be conducted promptly at Lessee's expense and free of expense to the Lessor, any taxes or assessments imposed upon or growing due and payable by reason of said [l]eased [p]remises or any part thereof.** The Lessee shall pay the amount that shall be finally assessed or imposed against such premises or be adjudicated to be due and payable as any such disputed or contested tax or assessment. **The Lessor will join in any contest or protest provided for in this paragraph at the request of the Lessee but at the Lessee's sole cost and expense and as a condition of such joinder the Lessor may require reasonable indemnity against costs or other damage by reason of such joinder.**

Reproduced Record (R.R.) at 131a-132a, 220a-221a (emphasis added).

On December 17, 2012, Lessees applied to the Board seeking tax immunity and/or exempt status for the Parcels. In a February 21, 2013 letter, the Authority's Chairman Jeffrey Johnson (Johnson) notified the Erie County Bureau of Assessment's Director of Assessment Scott Maas (Maas):

The [Authority] does not support the immunity or exemption from real estate taxes for Authority property unless it fulfills the core mission of the Authority. The Authority has leased properties to . . . Bay Harbor Marina, which are purely private, for-profit and commercial entities. These types of entities operate yacht clubs, marinas and recreational boat sales, and in no way further the core mission of the Authority. As the record owner of the [Parcels], the Authority opposes the grant of immunity or exemption from *ad valorem* property taxes for these [Parcels] and believes they are a proper subject of taxation.

We are, therefore, revoking the Authority's joinder in the Petitions seeking immunity or exemption from taxes that are now before the [Board].

We would kindly request that you make the Board aware of our position on this matter in that there is a hearing scheduled before the Board . . . .

5

R.R. at 222a. The Board held a hearing on Lessees' application and, on March 28, 2013, declared that the Parcels remained taxable. *See* R.R. at 19a-20a. Lessees timely appealed to the trial court.[2] The City and the District intervened. On April 22, 2014, the Authority passed a resolution stating:

> BE IT RESOLVED THAT THE [AUTHORITY] DOES NOT SUPPORT THE EXEMPTION FROM REAL ESTATE TAXES FOR AUTHORITY PROPERTY UNLESS IT FULFILLS THE CORE MISSION OF THE AUTHORITY, THE AUTHORITY HAS LEASED THE PROPERTY TO BAY HARBOR MARINA, WHICH IS PURELY PRIVATE, FOR PROFIT AND COMMERCIAL ENTITY. THIS ENTITY OPERATES A MARINA AND HAS PAID TAXES ON THE LEASED PROPERTY SINCE THE INITIATION OF THE LEASE. AS THE RECORD OWNER OF THE SUBJECT PARCELS, THE AUTHORITY SUPPORTS THE CONTINUED PAYMENT OF PROPERTY TAXES FOR THESE PARCELS AND BELIEVES THEY ARE PROPER SUBJECTS OF TAXATION.

R.R. at 223a.

On October 31, 2014, the District filed a summary judgment motion (District's Motion), in which the City and the Board joined. On March 2, 2015, the trial court heard argument on the District's Motion. During argument, the trial court informed the parties that because there were no material facts at issue, it would decide the case on summary judgment motions, and offered Lessees an opportunity to file their own summary judgment motions. The trial court also notified the parties that it would remove the Authority from the caption since the Authority was not a party.

On March 27, 2015, the District and the City moved to amend the caption to add the District and the City as intervenors. On March 31, 2015, the trial

---

[2] The matter was severed into two separate actions, but the cases were handled on a consolidated basis. *See Alma vs. Monroe Cty. Bd. of Assessment Appeals*, 83 A.3d 1121 (Pa. Cmwlth. 2014) (the taking of one appeal from multiple judgments is discouraged).

6

court issued an order granting the motion to amend the caption, declared that the Authority was not a party to the action, and removed the Authority from the caption. On April 27, 2015, Lessees filed their summary judgment motion and a motion to join the Authority as a party. On June 10, 2015, the District filed a motion to assign all burdens of proof to Lessees (Burdens Motion).

On October 12, 2015, the trial court heard argument on the summary judgment motions and the joinder motion. On July 13, 2016, the trial court granted the District's Motion and denied Lessees' summary judgment motion. Although the trial court declared that Lessees had standing to pursue an exemption,[3] relative to immunity, the trial court explained:

> Under the [Act], an authority has the power to lease real estate. 55 P.S. § 573. The [Authority] is also entitled to immunity from taxation based upon Section [12 of the Act], which states, *inter alia*, that 'the authority shall not be required to pay any taxes or assessments upon property acquired or used by it for such purposes[.]' 55 P.S. § 582. There is no provision under the [Act] regarding standing and immunity claims for purposes of appeal. Additionally, [Section] 8844 of the Consolidated County Assessment Law [(CCAL)[4]], which permits [Lessees] to file an exemption appeal, does not specifically authorize an immunity challenge.
>
> Th[e trial c]ourt agrees with [Lessees] that there is a paucity of legal authority on the issue of standing in an immunity claim. The absence of relevant case law, however, does not lead to the conclusion that cases involving standing in exemption claims are applicable by analogy or default. Rather, th[e trial c]ourt concludes that the lack of legal authority on the specific issue of standing in the context of an immunity claim is due to the fact that immunity is normally not raised by a lessee of a property owner or

---

[3] The District acknowledges in its brief to this Court: "Admittedly, the [t]rial [c]ourt granted standing to seek an exemption under what the [trial c]ourt determined to be applicable case law and this is not challenged on appeal." District's Br. at 15.

[4] 53 Pa.C.S. §§ 8801-8868.

7

> others claiming derivative standing. Accordingly, for
> purposes of this appeal, th[e trial c]ourt finds that [Lessees]
> have no standing to raise immunity from taxation.

Trial Ct. Op. at 10 (footnote omitted). The trial court further considered whether the Parcels are used for a public purpose and concluded that Lessees were not so entitled to immunity.

> The trial court's opinion also included the following footnote:

> In tax exemption cases, the burden of proof is normally on the taxpayer. *City of Phila*[.] *v. Cumberland C*[*ty.*] *Bd.* [*o*]*f Assessment Appeals*, 81 A.3d 24, 25 n.1 (Pa. 2013). ('[I]f an entity is immune, the taxing authority bears the burden of establishing why taxation is permissible; if the entity is exempt[,] the entity bears the burden of establishing why it should not be subject to taxation.') However, *Norwegian T*[*ownship v. Schuylkill County Board of Assessment Appeals,* 74 A.3d 1124 (Pa. Cmwlth. 2013),] held that property owned by a municipality is presumed to be exempt from taxation; accordingly, the burden of proof is on a taxing authority to claim otherwise. *Norwegian Twp*[.]

Trial Ct. Op. at 11 n.6. On July 18, 2016, the trial court entered a post-judgment order denying the Burdens Motion.

On August 11, 2016, Bay Harbor timely appealed from the trial court's July 13, 2016 order to this Court.[5] On August 11, 2016, Marina Holdings also appealed from the trial court's July 13, 2016 order to this Court.[6] On August 16, 2016, the District filed a cross-appeal to Marina Holdings' appeal,[7] and filed a cross-appeal to Bay Harbor's appeal,[8] contending that the trial court erred in its July 13, 2016 opinion and order by ruling that the taxing authorities had the burden of proving exemption and immunity. On August 16, 2016, the District appealed from the trial

---

[5] Bay Harbor's appeal is docketed at 1377 C.D. 2016.
[6] Marina Holdings' appeal is docketed at 1387 C.D. 2016.
[7] The District's cross-appeal of Marina Holdings' appeal is docketed at 1389 C.D. 2016.
[8] The District's cross-appeal of Bay Harbor's appeal is docketed at 1391 C.D. 2016.

8

court's July 18, 2016 order denying the District's Burdens Motion.[9]  On September 6, 2016, this Court ordered the parties to address in their briefs, the appealability of the trial court's July 18, 2016 order.  On November 2, 2016, this Court consolidated Lessees' appeals, the District's cross-appeals, and the District's appeals from the trial court's July 18, 2016 order. [10]

Lessees first argue that the trial court erred when it held that Lessees did not have standing to pursue their tax immunity claim.

> Standing is a requirement that parties have sufficient interest in a matter to ensure that there is a legitimate controversy before the court.  In determining whether a party has standing, a court is concerned only with the question of who is entitled to make a legal challenge and not the merits of that challenge.

*In re T.J.*, 739 A.2d 478, 481 (Pa. 1999).  Consequently, we consider Lessees' interests.

Initially, we note that Section 3(a) of the Act states, in relevant part, that "[t]he [port] authority shall exercise the public powers of the Commonwealth as an agency thereof."  55 P.S. § 573(a).  "As a general matter, **property** owned by the Commonwealth and its agencies **is immune** from taxation by a local subdivision in

---

[9] The District appealed from the trial court's July 18, 2016 order relative to Bay Harbor docketed at 1390 C.D. 2016, and relative to Marina Holdings docketed at 1388 C.D. 2016.

[10] This Court has explained:

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. Summary judgment is proper only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law.

*Kincel v. Dept of Transp.*, 867 A.2d 758, 761 n.7 (Pa. Cmwlth. 2005) (citation omitted).

the absence of express statutory authority." *Se. Pa. Transp. Auth. (SEPTA) v. Bd. of Revision of Taxes*, 833 A.2d 710, 713 (Pa. 2003) (emphasis added).

Section 12 of the Act, entitled: "Exemption from taxes and assessments" provides, in pertinent part:

> The effectuation of the **authorized purposes** of any authority created under this [A]ct, shall and will be in all respects for the benefit of the people of the Commonwealth, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions; and since the authority will be performing essential government functions in effectuating such purposes, **the authority shall not be required to pay any taxes or assessments upon any property acquired or used by it for such purposes**[.]

55 P.S. § 582 (emphasis added). Although the title of Section 12 of the Act specifically references "[e]xemption," in *Lehigh-Northampton Airport Authority v. Lehigh County Board of Assessment Appeals,* 889 A.2d 1168 (Pa. 2005), our Supreme Court interpreted almost identical language in Section 5620 of the Municipality Authorities Act (MAA)[11] as affording tax immunity. *See also Del. Cty. Solid Waste Auth. v. Berks Cty. Bd. of Assessment Appeals*, 626 A.2d 528 (Pa. 1993).

In contrast, with respect to exemption, Section 8812(a) of the CCAL provides, in relevant part:

> The following property shall be exempt from all county, city, borough, town, township, road, poor, county institution district and school real estate taxes:
>
> . . . .
>
> (8) All other public property used for public purposes with the ground annexed and necessary for the occupancy and use of the property, but this shall not be construed to include property otherwise taxable which is owned or held by an agency of the [f]ederal [g]overnment. This chapter or

---

[11] 53 Pa.C.S. §§ 5601-5623.

any other law shall not be construed to exempt from taxation any privilege, act or transaction conducted upon public property by persons or entities which would be taxable if conducted upon nonpublic property regardless of the purpose for which the activity occurs, even if conducted as agent for or lessee of any public authority.

53 Pa.C.S. § 8812(a).

Section 8844(c)(1) of the CCAL permits "[a]ny person aggrieved by any assessment, whether or not the value thereof shall have been changed since the preceding annual assessment, or any taxing district having an interest in the assessment, [to] appeal to the [B]oard for relief." 53 Pa.C.S. § 8844(c)(1). Appeals from the Board to the trial court are governed by Section 8854(a)(1) of the CCAL which provides:

> Following an appeal to the [B]oard, any appellant, property owner or affected taxing district may appeal the [B]oard's decision to the court of common pleas in the county in which the property is located in accordance with [Section 5571(b) of the Judicial Code,] 42 Pa.C.S. § 5571(b) (relating to appeals generally) and local rules of court.

53 Pa.C.S. § 8854(a)(1). The aforementioned language does not specify whether a Commonwealth agency lessee is a "person aggrieved by an[] assessment[.]" 53 Pa.C.S. § 8844(c)(1). However, our Supreme Court

> has held that 'where a person is not adversely affected in any way by the matter challenged, he is not aggrieved and thus has no standing to obtain a judicial resolution of that challenge.' *Hosp. & Healthsystem Ass'n of P*[*a.*] *v. Dep*[*'t*] *of Pub*[*.*] *Welfare, . . .* 888 A.2d 601, 607 ([Pa.] 2005) (citing *William Penn Parking Garage, Inc., v. City of Pittsburgh, . . .* 346 A.2d 269, 280 ([Pa.] 1975)). Moreover, in order to be aggrieved, a party must show that it has a substantial, direct and immediate interest in the claim sought to be litigated. *Id.*; *William Penn,* 346 A.2d at 280–83. We have defined these requirements as follows: a 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all

11

> citizens in procuring obedience to the law; a 'direct' interest requires a showing that the matter complained of caused harm to the party's interest; **an 'immediate' interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.** *Hosp. & Healthsystem Ass'n,* 888 A.2d at 607; *S*[.] *Whitehall T*[*wp.*] *Police Serv*[.] *v. S*[.] *Whitehall T*[*wp.*], . . . 555 A.2d 793, 795 ([Pa.] 1989).

*Pa. Med. Soc'y v. Dep't of Pub. Welfare*, 39 A.3d 267, 278 (Pa. 2012) (emphasis added).

In *In re Board of Property Assessment*, 797 A.2d 414 (Pa. Cmwlth. 2002), this Court considered whether Pittsburgh International Airport private, for-profit food vendor sublessees had standing under the General County Assessment Law (GCAL)[12] to appeal from an assessment finding that their parcels were not tax exempt. The Court examined the language of Section 518.1(a) of the GCAL which states "[a]ny owner of real estate or taxable property in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal . . ." therefrom. 72 P.S. § 5020-518.1(a).[13] The Court explained that in earlier cases it had "determined that the term 'owner' includes not only the registered owner of the real estate, but also an equitable owner or owner of a taxable interest in the property." *In re Bd.*, 797 A.2d at 417. It further stated:

> Each of the sublessees in this matter has entered into a seven-year sublease that obligates it to pay all taxes assessed or levied against the premises. Under the terms of each sublease, upon expiration or termination of the lease term, improvements made by the sublessee become the property of the County as record owner of the terminal and

---

[12] Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020-1 – 5020-602.

[13] Added by Section 2 of the Act of December 28, 1955, P.L. 917.

remain in place unless the County requests their removal, in which case the sublessee is obligated to remove them. . . .

[T]he facts . . . support a conclusion that the parties to the lease agreements intended that the sublessee is the owner of the parcel for tax purposes because the seven-year commercial sublease indicates that the title to the improvements, as well as the leasehold itself, remain in the lessee during the term. [E]ach of the sublessees of public property in this case, is the 'owner' of a non-freehold, possessory interest in the taxable property for a term of years, something less than legal or equitable ownership, but ownership nonetheless for the purposes of Section 518.1 [of the GCAL].

*In re Bd.*, 797 A.2d at 418 (footnotes omitted).[14]

In addition, this Court must examine the factors established in *Pennsylvania Medical Society* to determine whether Lessees are aggrieved. First, Lessees do have a substantial interest in the litigation's outcome because of their interests in tax relief from taxes imposed on the Parcels, where their leases require payment thereof, exceed the common interest of all citizens. Further, Lessees have direct interests because the Board's decision triggers their lease obligations.

Whether Lessees have an immediate interest is less clear. Here, if the Parcels are not immune under Section 12 of the Act, Lessees are subject to tax liability. Therefore, we must consider the "zone of interests sought to be protected by" Section 12 of the Act. *Pa. Med. Soc'y*, 39 A.3d at 278. The District argues that since Section 12 of the Act applies only to the Authority, the "zone of interests sought

---

[14] The *In re Board* Court, stated: "Of equal importance to our conclusion on this point is that the interests of the County, as record owner of the airport terminal, are not adverse to those of the tax-paying sublessees." *In re Bd.*, 797 A.2d at 418 n.11. In the instant action, because the Authority has taken the position that the Parcels are taxable, "the interests of the [Authority], as record owner of the [Parcels], **are** . . . adverse to those of the tax-paying [Lessees]." *Id.* (emphasis added). We note that "[i]t is well settled that tax immunity is distinct from tax exemption." *SEPTA*, 833 A.2d at 713. Although this Court has considered lessees' standing in the context of tax exemption, it has not done so with respect to tax immunity. Notwithstanding, the nature of Lessees' interests are similar to those in *In re Board*.

13

to be protected" pertains only to the Authority. *Id.* However, Section 12 of the Act is not so narrow, but rather focuses on the "[t]he effectuation of the authorized **purposes**[15] of any authority created . . . " thereunder. 55 P.S. § 582 (emphasis added).[16] Therefore, as lessees of Authority property which is purportedly used to further the Authority's authorized purposes, Lessees would be included within Section 12 of the Act's "zone of interests." *Pa. Med. Soc.*, 39 A.3d at 278. Accordingly, this Court concludes that Lessees had standing to challenge the denial of tax immunity, and the trial court erred when it held otherwise.

---

[15] The Authority's purpose is described in Section 3(a) of the Act: "Each authority shall be for the purpose of planning, acquiring, holding, constructing, improving, maintaining and operating, owning, leasing, either as lessor or lessee, **port facilities** and equipment." 55 P.S. § 573(a) (emphasis added). Section 2 of the Act defines "port facility" to include

> all real and personal property **used in the operation of a port terminal**, including, but without being limited to, wharves, piers, slips, ferries, docks, graving docks, drydocks, ship building and/or repair yards, bulkheads, dock walls, basins, carfloats, float-bridges, dredging equipment, radio receiving and sending stations, grain or other storage elevators, warehouses, cold storage, tracks, yards, sheds, switches, connections, overhead appliances, bunker coal, oil and fresh water stations, railroads, motor trucks, floating elevators, airports, barges, scows or harbor craft of any kind, markets and every kind of terminal storage or supply depot, now in use or hereafter designed for use, to facilitate transportation and for the handling, storage, loading or unloading of freight at terminals, and equipment, materials and supplies therefor.

55 P.S. § 572 (emphasis added). Section 2 of the Act also defines "port terminal" as "any **marine** . . . **terminal** . . . **used or to be used, in connection with the transportation or transfer of freight, personnel and equipment.**" 55 P.S. § 572 (emphasis added).

[16] Consideration of this broader "zone of interests" is consistent with the concept that immunity attaches to the Commonwealth **property** itself, rather than simply to the Commonwealth. As our Supreme Court stated, "**property** owned by the Commonwealth and its agencies is immune from taxation by a local subdivision in the absence of express statutory authority," so long as the agency action is within the agency's authorized purposes and powers, and so long as the property is used for a purpose that is within the agency's operations. *SEPTA*, 833 A.2d at 713 (emphasis added).

14

Our conclusion that Lessees have **standing** to assert their immunity claims is not a declaration that the claims are meritorious. *See In re T.J.* "Whether property is tax-exempt or immune from taxation is a question of law[.]" *Norwegian Twp.*, 74 A.3d at 1128 n.3. Thus, we consider Lessees' immunity claim consistent with our Supreme Court's holding in *SEPTA*, that

> a court must first look at the broader question of whether the agency's action is within its 'authorized purposes and powers.' *Delaware C*[*ty.*]. However, the inquiry does not end at that point. The court must also consider the scope of the immunity, i.e., whether the property was acquired or used for a purpose that is within the operation of the agency. In making this determination, the court must keep in mind that immunity is not limited to the absolute minimum of property necessary for operations.

*SEPTA*, 833 A.2d at 716. This includes considering whether the Parcels are being used as "port facilities" as defined by the Act. Lessees' argument that Section 3(b)(5) of the Act permits the Authority to "lease as lessor" Authority property is not alone sufficient to conclude that the **use** of the Parcels is within the Authority's purposes and powers. *See SEPTA.*

Lessees rely on the subject lease language and deposition testimony to establish that the Act authorizes operation of the recreational marinas. Specifically, Lessees point to the testimony of the Authority's Executive Director Raymond Schreckengost (Schreckengost), who testified that the Authority's mission is "[t]o promote industrial, commercial and recreational opportunities on Presque Isle Bay and adjacent waters." R.R. at 261a. Lessees further rely on Schreckengost's descriptions of other Authority-operated recreational marina facilities, asserting that the Authority "regularly elects to utilize public-private partnerships to further its statutory purposes." Lessees' Br. at 44. According to Lessees, "[i]n every case, the [Authority] is utilizing its statutory power to enter into leases as a lessor and is doing

15

so to implement its statutory purpose of developing and maintaining marine facilities." Lessees' Br. at 45.

Notwithstanding Lessees' claims, the Authority's actions do not "implement [its] statutory purpose of developing and maintaining **marine facilities.**" *Id.* (emphasis added). This Court acknowledges the Authority's statutory power to enter into leases and to lease Authority property. However, Section 3(a) of the Act provides that "[e]ach authority shall be for the purpose of planning, acquiring, holding, constructing, improving, maintaining and operating, owning, leasing, either as lessor or lessee, **port facilities** and equipment." 55 P.S. § 573(a) (emphasis added). Section 2 of the Act defines "port facilities" as "including all **real and personal property used in the operation of a *port terminal*[.]**" 55 P.S. § 572 (bold and italicized emphasis added). "'**Port terminal**' includes any marine . . . **terminal** . . . **used or to be used, in connection with the transportation or transfer of freight, personnel and equipment.**" *Id.* (emphasis added). Because the Authority's statutorily-mandated purpose does not expressly authorize the Authority's operation of a **recreational** marina, we conclude that the Parcels are not immune from taxation.

We next address whether the trial court erred by *sua sponte* removing the Authority from the case caption because the Authority is an indispensable or necessary party. The District,[17] City[18] and Lessees[19] do not dispute that the Authority is a party to the action. Lessees named the Authority as a party in its appeal to the

---

[17] The District states in its brief to this Court that "[t]he [Authority] was a named party at least until April 1, 2015, and remained a designated party even after September 5, 2014[,] when the [trial court] granted severance by a September 5, 2014 order providing that [Lessees] will be [the a]ppellants along with the [Authority]." District's Br. at 20 (citation omitted).

[18] The City argues in its brief to this Court that it "is not disputing that the Authority did become a party commencing with the appeal to the [B]oard and throughout." City's Br. at 22.

[19] Lessees assert in their brief to this Court that "[u]pon the filing of the appeals, the owner of the properties, the [Authority], was identified as an appellant by [Lessees]." Lessees' Br. at 32. "[T]he [Lessees] believe that the [Authority] has already been joined as a party." *Id.*

16

trial court based on Section 4 of the leases, which stated in relevant part, "[t]he Lessor will join in any contest or protest provided for in this paragraph at the request of the Lessee . . . ." R.R. at 132a, 221a. Lessees further reason that they properly named the Authority as a party consistent with the rationale behind Pennsylvania Rule of Civil Procedure No. 2227 which states:

> (a) Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants.
>
> (b) If a person who must be joined as a plaintiff refuses to join, he or she shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder.

Pa.R.C.P. No. 2227. Lessees also note that the Authority's party status is consistent with Section 8844(e)(1) of the CCAL, that provides:

> **When an appeal has been filed, the [B]oard shall notify the appellant, property owner and each affected taxing district of the time and place of the hearing.** Each party attending the hearing shall have the right to examine any witness. The notice shall be mailed to the appellant at the address designated in the appeal. Notices required by this section shall be mailed no later than 20 days preceding the appeal. Any appellant who fails to appear for the hearing at the time fixed shall be conclusively presumed to have abandoned the appeal unless the hearing date is rescheduled by the mutual consent of the appellant and the [B]oard.

53 Pa.C.S. § 8844(e)(1) (emphasis added). This Court agrees that the Authority was properly named as a party in this action, and retained that status throughout the trial court's proceedings. Accordingly, the trial court erred by *sua sponte* removing the Authority's name from the case caption.

Lessees next contend that the trial court erred by concluding that Lessees, as Commonwealth agency lessees, were not entitled to tax exemption.

17

Lessees argue that the Authority-owned marina properties are entitled to tax immunity and/or exemption even when leased to private operators.

> Initially,
>
> [t]he elementary premise underlying taxation is that the power to tax is exclusively vested within the legislature. 'Property is immune from taxation if the taxing body has not been granted the authority to levy a tax.' *Delaware C[ty. Solid Waste Auth. v. Berks Cty. Bd. of Assessment Appeals,*] 626 A.2d [528,] 530 [(Pa. 1993)]. As a general matter, property owned by the Commonwealth and its agencies is immune from taxation by a local subdivision in the absence of express statutory authority. It cannot be presumed that general statutory provisions giving local subdivisions the power to tax local real estate, were meant to include property owned by the Commonwealth, since to allow such taxation would upset the orderly processes of government. Thus, in order to tax property owned by the Commonwealth, a local subdivision must establish that it has the authority to tax such property.
>
> On the other hand, **tax 'exemption' carves out specified property from taxation that the taxing body otherwise has the authority to tax.** *Delaware C[ty.],* 626 A.2d at 530. **The exemptions are the result of Article VIII, Section 2 of the Pennsylvania Constitution, which provides that the General Assembly may by law exempt from taxation certain classes of property, including 'that portion of public property which is actually and regularly used for public purposes.'** Pa. Const. Art. VIII, § 2(a)(iii). Thus, unlike immunity situations, the property is presumed to be subject to tax unless specifically excluded and the taxpayer must establish that the property is exempt from taxation.
>
> **Thus, the primary distinction between 'immunity' and 'exemption' is simply that 'the ordinary presumption against exemption does not apply where the property involved is owned by the Commonwealth, since such property has for reasons of public policy been consistently recognized as free from taxation.'** [*Commonwealth v.*] *Dauphin C[ty.],* 6 A.2d [870,] 872-73 [(Pa. 1939)].

18

*SEPTA*, 833 A.2d at 713 (emphasis added; citations omitted); *see also In re Appeal of Riegelsville*, 979 A.2d 399 (Pa. Cmwlth. 2009). In *Lehigh-Northampton*, the Supreme Court further clarified its *SEPTA* analysis:

> [A] precept evident from *Delaware County* and *SEPTA* is that the standard for judging the scope of immunity may be different from that applicable to questions of tax exemption. Because exemptions are statutory in nature, the relevant statute supplies the governing standard. Presently, . . . the trial court focused upon the 'public purpose' test embodied in the [GCAL] . . . . On the other hand, under *Delaware County* and *SEPTA*, immunity is assumed unless the agency acts outside of its authorized governmental purposes. This aligns with Section 5620 [of the MAA], which affirms that authorities need not pay taxes on property acquired or used for 'authorized purposes' relating to the 'perform[ance of] essential governmental functions.' 53 Pa.C.S. § 5620[.]

*Lehigh-Northampton*, 889 A.2d at 1179. Importantly, in *Norwegian Township* this Court explained:

> In *SEPTA,* our Supreme Court described two distinct analyses; one used to determine whether a property is tax-immune and the other used to determine whether a property is tax-exempt. However, . . . the Supreme Court observed that courts within the Commonwealth have used the terms 'immunity' and 'exemption' interchangeably. As we noted in *Granville* [*Township v. Board of Assessment Appeals of Mifflin County*, 900 A.2d 1012, 1015 (Pa. Cmwlth. 2006)], the distinction between tax immunity and tax exemption is unnecessary in the context of government-owned property. **Whether either term is used, government-owned property is not taxable if it is being used for a public purpose, and the taxing authority bears the burden to prove its taxability. Stated otherwise, the taxing authority must prove that the government-owned property is not being used for a governmental purpose in order for the property to be taxable.**[20]

---

[20] The District and the City strenuously argue that the trial court erred by placing the burden of proof on the taxing authority rather than on Lessees. They contend that because the Authority

does not support Lessees' immunity and exemption claims, the burden should be with Lessees. The District asserts:

> The [Authority] does not seek the exemption. It opposes it. Either way, the effort to derive the benefits of Section [12 of the Act] suffer from the fatal flaw [-] [Lessees are] not the part[ies] Section [12 of the Act] intends to benefit. The burden of proof in exemption cases rests with the proponent of the exemption. The burden of proof in exemption cases normally rests on the taxpayer. Statutory provisions that exempt property from taxation must be strictly construed.

District's Br. at 70-71 (citations omitted). After our Supreme Court explained in *SEPTA* that the presumption against exemption does not apply where Commonwealth property is involved, it again addressed the issue in *Lehigh-Northampton*, stating:

> In contrast to tax immunity, tax exemption does not implicate the authority to tax, but excludes from taxation specified property that would otherwise be taxable. This difference is significant because exemptions are evaluated according to a principle of strict construction in favor of taxation, *see* 1 Pa.C.S. § 1928(b)(5), whereas doubts are resolved in favor of the taxpayer in assessing the reach of the taxing statute in the first instance. *See . . . Delaware C[ty.], . . .* 626 A.2d at 531 (**'[W]e strictly construe statutes purporting to permit taxation of Commonwealth property, and such a grant may not be found by implication.'** (citing *Appeal of Harrisburg Sch. Dist., . . .* 417 A.2d 848 ([Pa. Cmwlth.] 1980), and *Mastrangelo v. Buckley, . . .* 250 A.2d 447 ([Pa.] 1969))). **'Thus, the primary distinction between 'immunity' and 'exemption' is simply that 'the ordinary presumption against exception does not apply where the property involved is owned by the Commonwealth, since such property has for reasons of public policy been consistently recognized as free from taxation.'** *SEPTA, . . .* 833 A.2d at 713 (quoting *Commonwealth v. Dauphin C[ty.], . . .* 6 A.2d at 872-73). **In short, Commonwealth property is presumed immune, and the local taxing body bears the burden to demonstrate taxability.**

*Lehigh-Northampton*, 889 A.2d at 1175-76 (emphasis added; citations omitted). In *Granville*, this Court held that "the burden of proof of liability for taxes is on the taxing authority where the real estate in question is **owned** by a governmental body." *Granville*, 900 A.2d at 1016 (emphasis added). There is no ambiguity here. **Both the Pennsylvania Supreme Court and this Court have spoken clearly that Commonwealth-owned property is presumed immune and exempt from taxation and the burden is on the taxing authority to demonstrate otherwise.** Certainly, the presumption may be overcome. Although the Authority, as owner, may disagree that Lessees are

*Norwegian Township,* 74 A.3d at 1131 (emphasis added; citations omitted).

> What, then, is the established law as to the taxability of property or part of property which would admittedly be exempt from taxation if used by the owner for a public purpose but which is leased to other tenants? The controlling test is, not merely whether the property or part of it has been rented out, but **whether the use of the part so leased is for a public or a private purpose. It is the use of the property, and not the use of the proceeds from the property, which determines whether tax exemption may constitutionally be granted.**

*Appeal of Mun. Auth. of Borough of W. View*, 113 A.2d 307, 309 (Pa. 1955) (emphasis added); *see also Basehore v. Hampden Indus. Dev. Auth.*, 248 A.2d 212 (Pa. 1968). More recently, this Court explained: "[T]he key to exemption is evidence establishing that the lessee's use of the public property is furthering the purpose of the governmental agency from which the lessee rents the property. In the absence of such evidence . . . the property is not serving a public purpose and is not tax exempt." *Pier 30 Assocs. v. Sch. Dist. of Phila.*, 493 A.2d 126, 129-30 (Pa. Cmwlth. 1985).

Citing to *Borough of West View* and to *Pittsburgh Public Parking Authority v. Board of Property Assessment*, 105 A.2d 165 (Pa. 1954), this Court in *Wesleyville Borough v. Erie County Board of Assessment Appeals*, 676 A.2d 298 (Pa. Cmwlth. 1996), further explained:

> Our Supreme Court has . . . stated that the fact that property of a public body is leased to another entity, even a private party deriving profit therefrom, will not defeat the tax exemption **if the property is being used for the specifically[-]authorized public purpose for which it was acquired. The controlling test for tax exemption is not whether the property or part of it has been leased out, but whether the *use* of the property so leased is for a**

---

entitled to tax exemption, the Authority's position does not change the burden as long as the Authority owns the Parcels.

> **public purpose. This [C]ourt has also stated that *the crucial point is not whether the public body is benefitted by the use of the leased property but whether the use is, in fact, public.***
>
> Where the primary and principal use to which property is put is public, the mere fact that income is incidentally derived from the use of the property does not affect its character as property devoted to a public use. **On the other hand, property that is owned by a tax-exempt entity is taxable if the property is used for commercial purposes or is rented to a lessee for a purely business enterprise and not a public use.**

*Id.* at 302 (citations omitted; bold and italicized emphasis added); *see also Upper Dauphin Nat'l Bank v. Dauphin Cty. Bd. of Assessment Appeals*, 561 A.2d 378 (Pa. Cmwlth. 1989); *see also Indiana Univ. of Pa. v. Indiana Cty. Bd. of Assessment Appeals* (Pa. Cmwlth. No. 1923 C.D. 2014, filed September 17, 2015), slip op. at 16 ("The general rule is when a governmental entity leases property **for a private or commercial purpose**, that lease does not count as a 'public purpose', and that property will not be exempt from taxation."[21] (Emphasis added)).[22]

In light of the foregoing, the Court examines Lessees' use of the Parcels to determine whether the trial court properly concluded their "use is [not], in fact, public." *Wesleyville,* 676 A.2d at 302. The trial court explained the factors upon which it based its conclusion that Lessees' use was not for a public purpose:

---

[21] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[22] This Court acknowledges that in 2002, in *In re Board*, this Court stated that "when public property is used by a private entity, the key to maintaining the tax exemption is evidence establishing that the lessee's use of the public property is furthering **the purpose of the governmental agency** from which the lessee rents the property." *Id*. at 419 (emphasis added). The analysis used therein seems more akin to an immunity analysis. Thus, the Court concludes that the *In re Board* Court's analysis does not reflect the current state of the law given the distinction between tax immunity and exemption recognized by our Supreme Court in 2003 in *SEPTA*, and in its 2005 *Lehigh-Northampton* decision.

Here, the [Authority], in exchange for rental income, leases the subject properties to commercial entities not affiliated with the [Authority]. As reflected by the evidence, these properties are utilized as private, for-profit marinas and inure to the sole benefit of [Lessees] and its subtenants. The public has either limited or restricted access to the marinas. The record is devoid of any evidence that the marinas are used for a public purpose. Furthermore, the [Authority] has no control over the marinas, particularly in the operations, decision making, or administration of the marinas. The [Authority] is also not involved in membership approval and rental fees with the subtenants.

Trial Ct. Op. at 13.

In support of their contention, the trial court erred and the Parcels are indeed being used for a public purpose, Lessees posit:

The [Parcels] are by definition owned by a public agency and therefore constitute public property. As for their use, it is equally apparent that the [Parcels] are used for public purposes. The leases mandate the use of the property for marinas. Hundreds of members of the public are able to utilize the docks for dockage every year. Uncountable others have access to the public access areas enabling both foot traffic and boats to be launched from the ramp at Bay Harbor West.

Although the exemption section of the [Act] is the source of the immunity of the [Authority], its statements of the benefits of the [Authority's] purposes is of relevance in demonstrating the public purposes to which the properties are being applied. [Section 12 of the Act] states that the purposes of the Authority are '*for* [ . . .] *the benefit of the people of this Commonwealth, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions:* [ . . . ,] 55 P.S. [§] 582. The marinas serve these purposes. They facilitate commerce and generate economic benefit to the Bayfront and surrounding areas. In terms of health and living conditions, the marinas provide recreation opportunities to the public which would not otherwise exist.

Lessees' Br. at 53-54 (citation omitted).

Importantly, Lessees omit critical terms from their quotation of Section 12 of the Act which omission serves to obfuscate the provision's true meaning. Specifically, Section 12 of the Act states:

> The effectuation of the ***authorized* purposes** of any authority created under this [A]ct, shall and will be in all respects for the benefit of the people of the Commonwealth, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions; and since the authority will be performing essential government functions **in effectuating such purposes**, the authority shall not be required to pay any taxes . . . .

55 P.S. § 582 (emphasis added). Thus, contrary to Lessees' assertions, the recreational marinas would only serve the Act's purposes and thereby "benefit . . . the people of the Commonwealth" if those recreational marinas fall within the **authorized** purposes of the Act. *Id.* Further, despite Lessees' contentions that the recreational marinas "facilitate commerce and generate economic benefit to the Bayfront and surrounding areas[, and] . . . provide recreation opportunities to the public which would not otherwise exist[,]" Lessees' Br. at 54, "the crucial point [in tax exemption] is not whether the public body is benefitted by the use of the leased property but whether the use is, in fact, public." *Wesleyville*, 676 A.2d at 302.

The case of *Reading Municipal Airport Authority v. Schuylkill Valley School District*, 286 A.2d 5 (Pa. Cmwlth. 1972), is instructive here. Therein, the Reading Municipal Airport Authority (Reading Authority), an authority created to manage Reading's airport, purchased two buildings containing a total of 16 T-hangars. The Reading Authority leased the buildings to a private corporation that leased the 16 T-hangars to aircraft owners. The Reading Authority claimed tax exemption for the buildings. Both the board of assessment and the county common pleas court concluded that the Reading Authority was not entitled to an exemption. On appeal, this Court affirmed, concluding:

24

> Where, . . . as here, buildings arranged for T-hangars are provided to a private business entity with no restriction as to use or charges for use and available for rental by that private business organization to persons of its unfettered choosing, we believe that there is not a public use. . . . [T]he property primarily serves [the lessee] and not the general public using the airport.

*Reading Mun. Airport Auth.*, 286 A.2d at 9-10.

Similarly, we find no public purpose in a gated, for-profit, membership-restricted recreational marina that leases boat slips. Nor do we find the existence of the Parcels' public access walking area and public boat launch persuasive in determining whether the recreational marinas are used for a public purpose, especially where Section 306.10 of the City's Zoning Ordinance **mandates** such public access for all proposed Bayfront development.[23] Although we acknowledge

---

[23] Section 306.10 of the Zoning Ordinance for the city of Erie (No. 80-2005) states:

> A free public access way* must be regarded as an essential component of all developments in all Waterfront Districts. Every proposed site development that has access to the Bayfront water's edge shall show on the plans a proposed free public access way, abutting and parallel to the water's edge. The free public access way shall be of sufficient width to comfortably handle the expected amount of pedestrians, but shall not be less than twelve (12) feet in width. The construction of the free public access way shall be of such material as to be aesthetically pleasing and in harmony with the site development, and shall not consist of gravel, stone, grass or other unapproved material. When the free public access way is abutting the water's edge, and an apparent danger exists, a safety barrier shall be installed. It shall be the responsibility of the developer and/or property owner to construct and maintain the public access way. In addition, said developer or property owner shall assume all liability. The public access way shall be made accessible to the handicapped. The free public access way shall have north/south access to a [City] Public Right-of-Way at maximum intervals of seven hundred sixty (760) feet. The issuance of a building permit shall be contingent upon the developer providing a performance bond in an amount equal to one hundred ten (110%) percent of the cost of the proposed free public access way.

25

that the Authority "is benefitted by the use of the leased property . . . the use is [not], in fact, public."[24] *Wesleyville*, 676 A.2d at 302.

Lessees also argue that the trial court applied an erroneous standard of proof when it stated, "[t]he record is devoid of any evidence that the marinas are used for a public purpose." Trial Ct. Op. at 13. Specifically, Lessees contend that:

> The burden is on the taxing bodies to establish that the public purpose exemption does not apply. This requires proof that the properties are not used for a public purpose. The so-called determination that the record is '*devoid*' of any evidence that they are used for a public purpose would apply if the burden were on the marina operators. It is not.

Lessees' Br. at 52-53.

At page 11 of its opinion, the trial court explicitly acknowledged that the taxing authorities have the burden to prove that the properties are subject to taxation. Further, immediately **prior** to the trial court's challenged statement about the absence of public purpose evidence, the trial court noted: "**As reflected by the evidence,**

---

*'Free Public Access way' - A constructed passage located within a Waterfront District designed for use by the general public for such activities as walking, jogging, fishing, etc., and made available for the public's use during daylight hours, and as mandated by City Council.

[24] Our conclusion is also consistent with the policy behind the public property exemption:

> The policy underlying the public property exemption is that by taxing government-owned property, the government would in effect be taxing itself. '[T]he exemption of the property of a municipality is founded on the fact that the municipality is a governmental agency of the State, vested by the State with a part of its sovereignty, and employed in aiding the State in matters of government and the execution of its laws. . . .' *Y.M.C.A. of Germantown v. Phila*[.]*,* . . . 187 A. 204, 210 ([Pa.] 1936).

*Granville*, 900 A.2d at 1015. In the instant matter, there is no concern of the government taxing itself. Lessees are to pay the taxes on the properties they use in the operation of their private businesses.

26

**these properties are utilized as private, for-profit marinas and inure to the sole benefit of [Lessees] and its subtenants. The public has either limited or restricted access to the marinas.**" Trial Ct. Op. at 13 (emphasis added). Accordingly, it is clear that the trial court did not improperly apply the burden, but rather, found that the Authority met its burden by proving that the marinas are "utilized as private, for-profit marinas and inure to the sole benefit of [Lessees] and [their] subtenants." *Id.* Accordingly, we discern no error in the trial court's conclusion that the public purpose exemption did not apply to the Parcels given Lessees' use.

Lessees next contend that the trial court should have examined each Parcel and individual part thereof to determine if the public access areas were exempt from taxation. Citing to *Lehigh-Northampton*, Lessees focus on the Supreme Court's statement that "[a]ny parcel -- **or part thereof** -- which is ultimately adjudged to be outside of the scope of the Authority's tax immunity will then be subject to local real estate taxes for the tax years in question only if it was deemed non-exempt in the bifurcated trial which has already occurred[.]" *Id.* at 1179-80 (emphasis added). Lessees assert that in light of this Court's holding in *Norwegian Township* and *Granville* that "the distinction between tax immunity and tax exemption is unnecessary in the context of government-owned property[,]" the same analysis should be applied to tax exemption claims involving government-owned property. *Norwegian Twp.*, 74 A.3d at 1131.

In response, the District argues that the Parcels' public access areas should not be exempt because

> the public access areas and/or the Bay Harbor West boat
> launch occupy a small area located within the lease
> premises. [Lessees] acquired their leasehold interest subject
> to these areas which are not sufficient to declare any portion
> of the subject properties tax exempt.

27

> That the public access areas, boat launch, restaurant and repair shop may be a convenience or incidental benefit to the public, does not rise to the level of or constitute public use and do not give rise to an exemption

District's Br. at 46 (citation omitted). Although the District argues that the particular areas are not used for a public purpose, the District fails to provide support for its position.

The City, also opposing the separate evaluation and consideration of the Parcels' public access areas, contends that the *Lehigh-Northampton* decision is inapposite because the Court did not hold that the lower court erred in its approach to parcel review, but simply remanded the case to the trial court to apply the *SEPTA* factors to evaluate the immunity claim. The City further maintains, in reliance upon *In re Koppel Steel Corp. v. Board of Assessment Appeals*, 849 A.2d 303 (Pa. Cmwlth. 2004), that the trial court properly viewed the marinas as contiguous parcels.

In *In re Koppel*, this Court held that the trial court incorrectly rejected an appraiser's valuation of appellant's 11 parcels where the appraiser valued the property as one integrated economic unit. In reversing the trial court, this Court held that "although a statute may require the assessment of separate tracts of land, contiguous tracts that are under single ownership and used for a common purpose may be joined into one large tract for assessment purposes." *In re Koppel,* 849 A.2d at 306.

The instant action is distinguishable from *In re Koppel*. Here, the question is whether leased Commonwealth property is subject to tax exemption, not the assessed value thereof. Importantly, Section 8812(a)(8) of the CCAL exempts from taxation "[**a**]ll other public property used for public purposes . . . ." 53 Pa.C.S. § 8812(a)(8) (emphasis added). We can discern no reason that the *Lehigh-Northampton* Court's procedure should not be applied to land, a portion of which is used for a public purpose. Thus, we reverse the trial court's holding that the entirety

28

of the Parcels are subject to taxation, and remand this matter for the trial court to determine whether portions of the Parcels are exempt.

The Court next addresses whether the District's cross-appeals of the trial court's July 13, 2016 order are properly before this Court, where the District was not aggrieved by it. Although the District prevailed before the trial court, the District's cross-appeals challenge the trial court's conclusion in its footnote 6 pertaining to the applicable burden of proof.

> Our Supreme Court has explained:
>
> Pennsylvania Rule of Appellate Procedure 501 permits any 'aggrieved party' to file an appeal. Pennsylvania case law also recognizes that a party adversely affected by earlier rulings in a case is *not required* to file a protective cross-appeal if that same party ultimately wins a judgment in its favor; **the winner is not an 'aggrieved party.'** *See Hosp*[.] *& Healthsystem Ass'n,* . . . (holding that [the Department of Public Welfare] was not an aggrieved party, as the prevailing party, and it did not need to file a cross-appeal). Our holding is further supported by the Note to Pennsylvania Rule of Appellate Procedure 511 which states, '[a]n appellee should not be required to file a cross[-]appeal because the Court below ruled against it on an issue, as long as the judgment granted Appellee the relief it sought.' Pa.R.A.P. 511, Note.

*Basile v. H & R Block, Inc.*, 973 A.2d 417, 421-22 (Pa. 2009) (emphasis added; footnote omitted). Similarly, in *Lebanon Valley Farmers Bank v. Commonwealth*, 83 A.3d 107 (Pa. 2013), the Supreme Court stated:

> 'Pennsylvania case law also recognizes that a party adversely affected by earlier rulings in a case is not *required* to file a protective cross-appeal if that same party ultimately wins a judgment in its favor; the winner is not an 'aggrieved party.'' *Basile* . . . , 973 A.2d [at] 421 . . . (citation omitted) (emphasis in original). Moreover, several Justices of this Court have gone a step further and suggested such appeals should not be permitted. *See id.,* at 424 (Saylor, J., concurring) (footnote omitted) (asserting

29

'[protective] cross-appeals generally should not be permitted' given that 'the collective burden of screening and addressing such cross-appeals may outweigh the benefits from the opportunity for an appellate court to advance the resolution of the litigation in individual cases'); *id.,* at 426-27 (Baer, J., concurring) (writing 'separately to second Justice Saylor's inclinations to deem protective cross-appeals impermissible' because 'refusing to hear [them] will streamline cases on appeal and prevent prevailing parties from deluging the courts with unnecessary protective cross-appeals[,]' and noting such practice would 'eliminate[ ] the question of whether a non-aggrieved party filing a protective cross-appeal must raise every potential appealable issue for fear of waiver').

*Lebanon Valley*, 83 A.3d at 112; *but see Meyer, Darragh, Buckler, Bebenek & Eck, PLLC v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247 (Pa. 2016).

Based on the above-quoted Supreme Court precedent, this Court agrees that the District was not aggrieved by the trial court's ruling on the burden of proof issue, and was not required to file a cross-appeal to prevent its waiver. Given our disposition of this appeal, the issue was preserved because it was necessary thereto, and the Court has addressed it herein in footnote 20. Accordingly, the District's cross-appeals (Docket Nos. 1389 and 1391 C.D. 2016) are quashed.

Finally, the Court addresses the question of whether the trial court's July 18, 2016 order, issued after the trial court's July 13, 2016 order granted the District's Motion and denied Lessees' summary judgment motion, and which denied the District's Burdens Motion, is an appealable order. The District provides two rationales to support its appeals from the trial court's July 18, 2016 orders. First, it contends that the July 18, 2016 order was an appealable collateral order. Second, it asserts that the July 13, 2016 opinion and order and the July 18, 2016 order should be treated as a single appealable order.

"It is fundamental law in this Commonwealth that an appeal will lie only from final orders, unless otherwise expressly permitted by statute." *T.C.R. Realty, Inc. v. Cox*, 372 A.2d 721, 724 (Pa. 1977).

Pennsylvania Rule of Appellate Procedure 313 states:

**(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

**(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review **and the question presented is such that if review is postponed until final judgment in the case,** the claim will be irreparably lost.

Pa.R.A.P. 313 (text emphasis added). Based on the above-quoted collateral order definition alone, since the trial court's July 18, 2016 order was issued **after** final judgment was entered on July 13, 2016, the July 18, 2016 order was not a collateral order. Further, our Supreme Court has held that an order postdating the grant of summary judgment has no effect. *See Sidkoff, Pincus, Greenberg & Green, P.C. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 555 A.2d 1284 (Pa. 1989). Additionally, the District does not provide any legal authority to support its position that the July 13 and July 18, 2016 orders should be treated as one. Accordingly, the Court holds that the July 18, 2016 order was not an appealable order, and dismisses the District's appeals pertaining to the same (Docket Nos. 1388 and 1390 C.D. 2016).[25]

---

[25] Notwithstanding, the Court notes that the substance of the District's appeals have been addressed herein at footnote 21.

31

For all of the above reasons, the trial court's order is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Bay Harbor Marina Limited Partnership, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Erie County Board of Assessment Appeals, and The School District of the City of Erie, and City of Erie | : | No. 1377 C.D. 2016 |
| | : | |
| Marina Holdings Limited, and Bay Harbor Marina Limited Partnership | : | |
| | : | |
| v. | : | |
| | : | |
| Erie County Board of Assessment Appeals, and The School District of the City of Erie, and City of Erie | : | |
| | : | No. 1387 C.D. 2016 |
| Appeal of: Marina Holdings Limited | : | |
| | : | |
| Marina Holdings Limited and Bay Harbor Marina Limited Partnership | : | |
| | : | |
| v. | : | |
| | : | |
| Erie County Board of Assessment Appeals, The School District of the City of Erie and the City of Erie | : | |
| | : | |
| Appeal of: The School District of the City of Erie | : | No. 1388 C.D. 2016 |
| | : | |
| Marina Holdings Limited and Bay Harbor Marina Limited Partnership | : | |
| | : | |
| v. | : | |
| | : | |

Erie County Board of Assessment
Appeals, The School District of the
City of Erie and the City of Erie

Appeal of: The School District of the         :         No. 1389 C.D. 2016
City of Erie

Bay Harbor Marina Limited Partnership

v.

Erie County Board of Assessment
Appeals, The School District of the
City of Erie and the City of Erie

Appeal of: The School District of the         :         No. 1390 C.D. 2016
City of Erie

Bay Harbor Marina Limited
Partnership

v.

Erie County Board of Assessment
Appeals and The School District of
The City of Erie and the City of
Erie

Appeal of:  The School District of the        :         No. 1391 C.D. 2016
City of Erie


O R D E R


        AND NOW, this 10th day of January, 2018, the Erie County Common
Pleas Court's (trial court) July 13, 2016 order is reversed in part and the matter is
remanded to the trial court for further proceedings to determine whether the public
access portions of the subject parcels are immune and/or exempt from taxation.
Further, the trial court is directed to return the Erie-Western Pennsylvania Port

Authority's name to the caption. The trial court's order is affirmed in all other respects.

Moreover, the School District of the City of Erie's (District) appeals docketed at Nos. 1388 and 1390 C.D. 2016 are dismissed, and the District's cross-appeals docketed at 1389 and 1391 C.D. 2016 are quashed.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge